Abraham Bloodgood, *Appellant*,
*against*
Martinus Zeily, *Respondent*.

If after a mortgage be forfeited, and execution sued out, on a judgment recovered on the bond, a conveyance to secure a portion of the mortgage

THE respondent, by his bill, in the court below, set forth, that in 1783, he purchased from the appellant a farm, then lying in the county of *Albany*, called the *Clabergh*, for which he was to give 450*l.* That of this sum he paid, on the purchase, 100*l.* in money, be made of other property, redeemable on paying a certain sum at a future day, such conveyance will partake of the quality of the original transaction, and be deemed a mortgage, and not a defeasible purchase ; therefore, if after lapse of the day, for repayment, the lands conveyed, be sold to a *bona fide* purchaser, though the purchase will not be impeached, the grantor will be entitled to an account, and the sum at which the land was sold, with interest, will be the amount for which he will be entitled to credit, though he did not demand a redemption, for more than six years after the day of repayment. After a judgment, an execution, and sale under a mortgage bond, the court will not open the account on the mortgage, though there be some degree of irregularity in the accounts, if from the whole, they appear to be fairly closed. *Query*, if an agreement by a mortgagee, who has bought in the mortgaged premises, to divide with the mortgagor, the surplus produce of a resale, after deducting debt and costs, if he will show the best lands, so as to get for the estate a given sum, be a valid agreement; or whether the showing the lands, be a condition precedent; *Query*.

money, 25 skepples of wheat, and 8 *cwt.* of flour, exe-cuting, for the residue, a bond and mortgage, dated the 24th of *February*, 1784, being the day after the date of the conveyance to himself.   That the appellant having obtained judgment on the bond, sued out, on the 1st of *September*, 1789, a *fi. fa.* directing a levy to be made, for 510*l.* debt and costs, which was ac-cordingly done.   That a sale did not actually then take place, because the respondent, on the 19th of the same month, *in order to obtain a longer time for pay-ment*, assigned to the appellant, *as an additional se-curity*, for the money due to him, class-rights for 1400 acres of land, located at the south end of *Cayuga* lake, with a power, authorising him to take out letters patent, in his own name ; and the appel-lant, at the same time, executed to the respondent, by way of defeasance, a bond for 300*l.* conditioned, that if the respondent, his heirs, &c. should pay the appellant, his heirs, &c. 250*l.* within one year from the date thereof, then the assignment of the class-rights should be void.   The bill then stated, that the appellant, in *October*, 1790, under an execution is-sued upon his former judgment, sold the *Clabergh* farm, and having himself purchased it in, directed the sheriff not to sell the personal estate of the respondent, as he, the appellant, was fully satisfied.   That imme-diately after, the appellant declared to the respondent, he knew of two persons, who were desirous of pur-chasing the farm, which he meant to sell, for 500*l.* and therefore, requested the respondent to show them the best lands, it being his intention to divide with the respondent, the surplus which might arise after payment of debt, interest and costs ; there-fore, to avoid the expense and trouble of a deed from

the sheriff, the respondent, at the instance of the appellant, conveyed the farm to him, in consequence of which, he entered into possession, and sold the property for 500*l.* to one *Henry Effener*, to whom the respondent had, by the appellant's request, shown the estate. · That letters patent had been obtained by the appellant, in his own name, for the class-right lands, which were worth 4,000*l.* The bill then set forth the usual application for a settlement, offering to allow all reasonable costs, &c. if the appellant would account for the proceeds of the sale to *Effener*, and reconvey the 1400 acres, which it concluded, by praying to be decreed.

The appellant, by his answer, admitted the purchase of the *Clabergh* farm, its subsequent sale, under the execution, and his buying it in, as alleged; but the sum directed to be levied, or the amount precisely due, he could not, he said, recollect. He acknowledged also, the assignment of the class-rights, his taking out the letters patent in his own name, the executing to the respondent, the bond for 300*l.* conditioned as set forth, and selling the farm to *Effener;* but he insisted the assignment of the class-rights, to have been in consideration of 100*l.* therein expressed, and denied that it was made as a security, for payment of the debt due on the bond and mortgage ; or, that he had any communication with the respondent, after the sheriff's sale, or requested a conveyance ; on the contrary, he averred, that he received a deed from the sheriff, dated the 12th *September*, 1791 ; though he acknowledged to have sold in 1796, the 1400 acres of class-rights, to *Simeon De Witt*, esquire, for 500*l.* which was the highest price that could then be obtained.

On the nature of the assignment of the class-rights, whether it was a defeasible purchase, or merely an additional security, as both parties relied on the facts in the bill and answer, neither examined any witnesses. To show, however, an adequacy of price, in the consideration stated in the answer, the president of the senate was interrogated, and he deposed, that in *September*, 1789, the value of class-rights was from 5 to 10*l.* per 100 acres. That in 1790 and '91, he located 13,000 acres, for about 2 shillings per acre. That in 1792, he purchased, for 100 dollars, a lot of 600 acres, more valuable than the class-rights in question, and on which they adjoined.

To establish the sum due on the *Clabergh* farm, at the time of its sale, the agreement to divide the surplus, after satisfying the appellant, the subsequent purchase by *Effener*, and the liability of the appellant, to account for the value, two witnesses were, together with *Effener* himself, examined.

The two first deposed, they were present when the property was sold by the sheriff; that the appellant acknowledged, his original demand was only 500*l.* from which were to be deducted some payments received; one to the amount of 100*l.* which had not been credited. That the appellant further said, if the respondent would show the best lands, so that 500*l.* might be obtained on the resale, he should have the whole amount of what might remain, after discharging debt and costs.

*Effener* testified, that the respondent, in consequence of a written request from the appellant, showed him the *Clabergh* farm, of which he became the purchaser, for 500*l.*

Upon these facts, his honor, the chancellor, decreed, " that the accounts between the parties, re-

lating to the mortgage, remained closed, the mort-
gage being satisfied : but inasmuch as it had not
satisfactorily appeared to the court, whether the 100*l.*
proved to have been paid by the complainant, to the
defendant, was the consideration expressed in the
assignment of the class-rights, for 1400 acres, or ano-
ther sum of money ; and inasmuch as that assign-
ment was considered by the court, as an additional
security for the money payable on the mortgage, and
made for no other purpose or intent, and inasmuch as
the defendant has admitted, that he procured letters
patent for the 1400 acres, which he has since dis-
posed of ; and as the court was not fully advised, to
what measure of compensation the appellant was en-
titled for the 1400 acres ; his honor directed, that it
be referred to a master, to ascertain, when and
in what manner the 100*l.* was paid to the com-
plainant ; what was, on the 1st of *December*, 1792,
the value of the said 1400 acres, and what their
value on the same day, in the year 1796, and that a
master examine *Effener*, whether, at the time he de-
livered the written request mentioned in his deposi-
tion, to the complainant, or at any time afterwards,
the complainant showed to him the mortgaged pre-
mises, or any, and what part thereof ; and that the
said master report the proofs taken in the premises,
and his opinion thereon, and that all further direc-
tions be reserved, until such report shall be made."
From this decree, the case now came up, on appeal,
and the chancellor thus assigned his reasons :

Mr. *President.* On this case, three questions
arise. 1st. Whether the respondent is entitled to an
account ? 2d. Whether, to the surplus of the produc-
tion of the sale, by the appellant, after satisfying

debt and costs ? 3dly. Whether to a conveyance for the 1400 acres located, and granted to the appellant, or, a compensation for them ?

As to the first question, the parties have not made out what was the consideration money agreed to be paid, on the purchase of the farm in question. The respondent alleges, it was 450*l.* The appellant, in his answer, declares he does not recollect it, and the deed imports it to be 410*l.* The respondent alleges, that 100*l.* some wheat and flour, were paid on account, and the mortgage taken for the residue.

The mortgage is also for 410*l.* It is, therefore, evident, from the written transactions of the parties, that the sum due on the 24th day of *February*, 1784, the date of the mortgage, was 410*l.* ; and though the respondent's allegations are not otherwise to be regarded, if not admitted or verified, than as limiting his claim, if they are admitted to that intent, it appears from his own showing, that the money, wheat and flour, alleged in his bill to be paid in satisfaction of the consideration money, were paid prior to the execution of the mortgage, and, therefore, cannot be received as a credit, on the debt secured by it.

There is no other allegation in the bill, of a payment made on the part of the respondent, though one of the witnesses swears, that at the time of the sale, the respondent alleged, and the appellant admitted, that a credit had been omitted of 100*l.* ; and the subsequent declaration of the appellant, that he was satisfied with the product of the sale of the farm, and his direction to stay the sale of the personal property of the respondent, appear to have been prompted by the admission of such payment.

R

This is strongly corroborated, by the result of the calculation of the amount of the principal and interest, payable on the mortgage, and the amount of the monies admitted to have been paid in satisfaction, from which it appears, that at the time of the sale, a sum, somewhat exceeding 100*l.* beyond the production of the sale, was necessary to satisfy the appellant.

Both parties seem to have conceded, that the debt was satisfied, and the respondent has not pretended that it was overpaid; though, from the irregular mode in which the business was conducted, the precise manner in which it was effected, cannot be satisfactorily developed, nor does it appear to me necessary to attempt it; for there is ground, in my opinion, to consider the account respecting the mortgage as closed, excepting only as to one item, which requires some further examination.

The 100*l.* which the respondent alleged he had paid, and the appellant admitted to have been paid, rests merely on those declarations, made at the time of the sale of the farm. No receipt has been produced; no circumstance disclosed, from which the time and manner of the payment can be collected. Connecting these considerations with the manner of adjusting the class-rights, some doubts are excited in my mind, whether the 100*l.* so paid, is not the sum described as the consideration money in the assignment of the class-rights.

To elucidate this point only, and not to open the account on the mortgage, I think it a proper object of reference to a master.

As to the second point. Whether the respondent is entitled to the difference between the purchase and sale price of the farm?

Here the respondent has limited his demand, by his bill to one half; the evidence would entitle him to the whole, if to any thing.

That the appellant promised, that he would divide such difference with the respondent, is not positively denied by the appellant in his answer ; and, it has been proved by two witnesses who were present, and swear to the conversation.  But they declare that the promises were made on the condition, that the respondent should show " *the best of the land,*" to persons disposed to become purchasers, so as to enable him to sell it at 500*l*.   It is proved that the appellant sold the land for 500*l*.   But though there is proof, that the appellant required the respondent to show the farm, by a letter delivered to him, by *Henry Effener*, the person who afterwards purchased it, there is no evidence of a compliance with that request.

The result expected to be produced by the respondent's showing the farm, was actually produced *by the selling it for* 500*l*. ;  but it is not ascertained whether he did, or did not perform the act, which entitled him to the benefit of the appellant's promise.   If he did not, I can discover no ground, on which I can decree its performance, for the showing the land, was in the nature of a condition precedent.   The delivery of the letter containing this request, and the subsequent purchase of the farm, by the bearer of it, for the sum fixed by the agreement, I think, however, raises that kind of presumption that the service was actually performed, which will warrant a further inquiry out of the ordinary course; I therefore, also, re-

ferred it to the master to inquire, whether the respondent showed the farm to *Henry Effener*, in consequence of the letter, or at any other time before, or after it was written.

I further stated, Mr. President, that I should have no objection, on the coming in of the report on this subject, to hear the parties, on the regularity of this last point of reference, if either of them, from its nature or object, supposed it not in strict unison with the course of proceeding in the court below.

As to the third point. I have little doubt, that the assignment of the class-rights, was made under the pressure of an execution without an advance of money on account of the purchase ; for the appellant does not pretend it in his answer, and the nature of the transaction forcibly repels any presumption arising from its acknowledgement in the assignment. But whatever the intent, all the circumstances attending it indicate, that, equitably construed, it can only be considered as an additional security. The bond speaks a plain language. It contains a clause in the condition, that if 250*l.* were paid in one year, that then, not only that bond, but the assignment should be void. It was coupled with a forbearance for one year, and for this forbearance, 150*l.* was exacted, beyond the legal interest, if the respondent should have it in his power to redeem, at the expiration of that period. I am, therefore, very clear, that the doctrine of conditional purchase-right is wholly inapplicable, and that the appellant ought to respond for the 1400 acres of land located.

If this land had not been alienated, the appellant having become a trustee, for the respondent, so soon

as the grant to him was perfected, a conveyance of it to the respondent, would, I think, under the circumstances of this case, be a thing of course. But the appellant alleges that he has sold it ; and, as it is not pretended that Mr. *De Witt*, the grantee, had notice of the trust, the conveyance to him must be considered as valid, and hence it may become a question of some difficulty, what ought to be the measure of compensation.

As then advised, I incline to think, that the period at which the land ought to be valued, was the time of the demand, which is stated to have been in 1796, though the sale was made in 1792.

Without, however, giving an opinion on this subject, I ordered it to be referred to a master, to ascertain what was the value of the 1400 acres of land, at both those periods, but if any improvements had been made thereon, exclusive of such improvements and the sum expended by the appellant, in obtaining the letters patent therefor.

The question respecting the validity of a sale of an equity of redemption, which was urged in the course of the argument, is settled, I conceive, by the respondent's own showing, that he confirmed the sale by a subsequent conveyance.

*Lush*, for the appellant. This case presents two questions. 1st. Was the respondent entitled to one half of the surplus, if any, on the sale to *Effener*, of the *Clabergh* farm ? 2d. Was the conveyance of the class-rights, a defeasible purchase, or a mortgage ?—On the first point, it is evident, there was no surplus in fact. A short statement will show this.

| | | |
|---|---|---|
| *February* 24th, 1784, there was due            -  | | 410*l.* |
| Interest to the 19th *September*, 1789            - | | 159*l.* 18 |
| Due the appellant on that day | | 569*l.* 18 |
| Deduct then paid            -            -  | | 100*l.* |
| Balance remaining            - | | 469*l.* 18 |
| Add interest from thence to the day of sale | | 31*l.* |
| Poundage and costs            -            - | | 17*l.* |
| Due on the *Clabergh* farm when sold | | 517*l.* 18 |

It is, therefore, clear, then, that the above sum, and not 374*l.* only, was justly owing to the appellant, when the property was brought to sale. The price, therefore, paid by *Effener*, could not yield a surplus. But allowing that there was one, still the appellant would not be bound to pay it over. His declarations, that are now relied on, and endeavoured to be turned against him, were made in the unsuspecting goodness of his heart, and without any consideration. They amounted to nothing, and can be considered but as a *nude pact*. It may be said, that a very trifling thing will be sufficient to raise a consideration, and for this, the authority of 1 *Pow. on Cont.* 342, 3, may be cited. But he does not seem to have apprehended the cases to which he refers.— They merely establish, that where a consideration has passed, a very little will amount to an acknowledgment. Thus, in the decision from *Croke*,[*] A. demised to B. and B. assigned to C. who promised A. to pay the rent due, if he would produce to him the deed by which it was reserved. A. showed him the deed, and held that he was bound. So in that from *Dyer*,[†] the defendant had received 50*l.* from the debtor of the plaintiff, and when called on for it,

[*] Sir *Anthony Sturl;n* v. *Alba-n;, Cro. Eliz.* 67.

[†] 272 *b. n.* (32) *Gilbert* v. *kud-deard.*

said he was not at leisure, but would pay it at ano-
ther day.   To make a contract valid, both parties
must be bound.   Here the respondent was not, for
he never assented.   Upon this principle, therefore,
the contract was null, and though a surplus had
arisen, it could not have been recovered.

The mere inspection of the assignment, is sufficient
to determine the second question, and evince it not to
be a mortgage.   It has not one single feature belonging
to such instruments.   There is no loan of money in it;
no stipulation for repayment; no covenant; no remedy
upon it.   These are necessary ingredients, to create a
mortgage.   The first is peculiarly essential.   A de-
feasance cannot be presumed; for the *English* prac-
tice on this point is unknown to us.   Nothing can be
argued from its not appearing that the assignment
was ever recorded; for, when it was executed, class-
rights were *choses* in action.   There is one circum-
stance, which seems conclusive in ascertaining the
nature of the deed.   The appellant was empowered to
take out the letters patent, in his own name, and thus
enter on the land.   Had the instrument been intend-
ed to operate as a mortgage, this would not have
been done; for under that species of security, the
mortgagor always remains in possession.   This de-
parture from general usage, shows a mortgage was
never intended.   The determinations in *Jason* v.
*Eyres,* 2 *Ch. Ca.* 33.   *Howard* v. *Harris,* 1 *Vern.*
33.   *Willett* v. *Winnell, ibid,* 488, and *Jennings* v.
*Ward,* 2 *Vern.* 520, which may be adduced, as
strong cases of redeemability against the tenor of
deeds, do not apply.   They only settle the rule of,
once a mortgage, and ever a mortgage.   But *Cot-
terell* v. *Purchase, Ca. temp. Talbot,* 61, goes the

whole length of the case before the court. It was there held, that an absolute conveyance, accompanied with possession, will not easily be presumed a mortgage, though there be an incongruous covenant in it. In *Ensworth* v. *Griffith*, 1 *Bro. Pa. Ca.* 149, a purchase of an equity of redemption by a mortgagee, though accompanied with a written memorandum of an agreement to permit a redemption, was, after a lapse of the day, ruled to have become absolute, and principally on account of the full worth of the estate having been paid. This circumstance is exactly analogous to the ground of the appellant's claim. *Barrell* v. *Sabine*, 1 *Vern.* 268, shows the distinction between a conditional purchase, and a mortgage. The first requires a strict adherence to the day limited for the repurchase, because lending and borrowing, is not the basis of the contract, and, therefore, though the value of the property was greatly enhanced, and there was a clause to restore, on repayment, on the day appointed, the court refused to direct a reconveyance, as the sale was absolute. The same principle is found in *Floyer* v. *Lavington*, 1 *P. W.* 268. But the case most like the present, is *Tasburgh* v. *Echlin*, 4 *Bro. Pa. Ca.* 142. There, the sum of 200*l.* lent on a proviso, similar to that in the assignment of the class-rights, was, merely because there was no covenant for repayment, held to be a conditional purchase, and a redemption denied though the value of the estate was 900*l. per annum*, and the lender had himself filed a bill, praying a redemption, or foreclosure.—— With this train of adjudications, therefore, in support of the appellant's title, there can, it is presumed, be little doubt of a reversal.

*Van Vechten*, contra.   The agreement to divide the surplus, that might be produced from the sale of the *Clabergh* farm, is proved by the testimony of two witnesses.   It remains, therefore, only to show that there was a consideration for such agreement, and that a surplus did arise.   To create a sufficient consideration, the mere showing the lands would suffice, and *Effener* himself proves that it was performed.   In support of there being an actual surplus, we have only to advert to the declarations of the appellant himself.   When the land was struck off to him in *October*, 1790, for 340*l.* he acknowledged himself to be satisfied, and he afterwards sells for 500*l.*   This, then, must have left a surplus, of the half of which, he instantly became, under the agreement, trustee for the respondent, and of course, liable to account.   As to the assignment of the class-rights, the circumstance of its being given under the pressure of an execution, merely to have a further indulgence, shows it to have been no more than a further security for the original debt; and redeemability, of course, a necessary incident.   The defeasance with which it was accompanied, still further elucidates this idea, and corroborates our position.   It is a settled principle, in equity, that every contract for the securing of money is a mortgage.— 1 *Pow. on Mort.* 146.   Therefore, though the condition of a mortgage be to redeem during the life of the mortgagor, the heir will be entitled to redemption.   *Kilvington* v. *Gardner*, 1 *Vern.* 192. Absolute conveyances, accompanied by defeasances, in separate deeds, are, by our statute,* considered as mortgages, and directed to be registered as such.

* *Act concerning mortgages.*

S

1 *Rev. Laws*, 481, *sec.* 3.   The case of *Manlove* v. *Ball* and *Bruton*, 2 *Vern.* 84, goes the whole length of the one before the court.   There, in consideration of 550*l.* an absolute conveyance was made of a church-lease for three lives.   The grantee executed a separate instrument, by which he agreed, on payment of 600*l.* within a twelve-month, to reconvey.   The 600*l.* were not paid.   Yet a redemption was allowed after the expiration of near 20 years, and though the defendant had twice renewed the lease, on the dropping of two of the original lives.   The mere lapse of the day of payment never works any injury, where there was an original redeemable interest.   *Exton* v. *Greaves*, 1 *Vern.* 138. *Croft* v. *Powel*, *Com.* 603.   Even a fine and nonclaim for five years, creates no difference.   *Rowell* v. *Walley*, 1 *Ch. Rep.* 218.   *Welden* v. *Duke of York*, 1 *Vern.* 132.   In *Stanhope* v. *Thatcher*, *Prec. Ch.* 435, an estate-tail created for the security of a sum of money, and even the fee subsequently acquired by a recovery, were held, in equity, to amount only to a mortgage, and defeasible on payment of the money due.   In viewing this case it is to be remembered, that redemptions are favoured, and defeasible purchases discountenanced.   *Howard* v. *Harris*, 1 *Vern.* 191.   The appellant might have treated the assignment as a mortgage.   It must, then, be equally so with respect to the respondent; for it cannot be a mortgage on one side only.

*Henry*, in reply, insisted, that however good such an agreement as that to divide the surplus of the *Clabergh* farm might have been, if assented to, it could not prevail between the respondent and appel-

lant; because the former, by refusing to reconvey, and driving the latter to the necessity of receiving a sheriff's deed, had destroyed all mutuality. To establish no surplus, he relied on the statement made by his associate counsel in opening. He admitted the general rule, as to the redeemability attached to mortgages, but contended that defeasible purchases were an exception to it, as they did not rest on a borrowing and lending, and the mere agreement to permit a repurchase, of such an interest as a class-right, which was only a *chose* in action, could not, he said, operate as a mortgage.

*Per Curiam*, delivered by KENT, Ch. J. It will not be requisite to recapitulate minutely the facts in the cause, but I apprehend it will be sufficient to state the points that have been raised for our consideration, and to apply the material facts to those points, as we proceed to discuss them.

The appellant contends that the decree is erroneous. 1st. In making the proceeds of the sale of the *Clabergh* farm any basis for an account; and, 2d. In allowing the respondent a right of redemption as to the assignment of the class-rights, for 1400 acres of land.

1st. The accounts between the parties relative to the bond and mortgage, do not appear to have been kept with much regularity or precision, and it would be difficult, from the facts before us, to make an accurate liquidation of those accounts. Nor do I think it necessary so to do, for I agree with the court below, in the propriety of considering the accounts relating to the mortgage as closed, and that the mortgage is to be considered as satisfied. It is equally needless to determine, whether the agreement to

divide the surplus monies arising upon the sale of the farm (if any such agreement was made) be valid and binding upon the parties, for I am satisfied there were no surplus monies to divide. The balance due upon the bond at the time of the sale must have amounted to 500*l.* and upwards, the sum at which the farm was afterwards sold to *Effener*, and that, too, after allowing as a credit, the sum specified, as the consideration of the assignment of the class-rights. With respect to that consideration, I think it clear, that it was not created by the advance of cash from the appellant to the respondent. The answer of the respondent does not pretend it was, and this must be the sum which the appellant, at the time of sale, admitted, ought to have been credited on the bond. The assignment, therefore, of the class-rights, must have been taken by the appellant, as equivalent to the payment of 100*l.* upon the bond.

This brings me to the consideration of the second point. Whether the respondent be entitled to redeem ? I consider the assignment of the class-rights as being intended by the parties to operate as the payment of 100*l.* on the bond and mortgage. It was not given, or accepted, absolutely as cash, but as a security for the payment of so much of the antecedent debt, and, therefore, I entirely agree with the chancellor, that it is not to be considered in the light of a defeasible purchase, but as an additional security for a part of the pre-existent debt, and to which the right of redemption was necessarily attached. I entertain a full persuasion that this is a just solution ; the real truth of the transaction. The internal evidence of the case is, to my mind, conclusive as to the fact. I have no doubt that this mode

of securing the payment of 100*l.* in part satisfaction of the execution, was the cause why proceedings under the execution, were stayed from *September*, 1789, when the assignment was made, until *September*, 1790, when the respondent made default in the redemption of his class-rights. I am of opinion, therefore, that a right of redemption most justly and equitably attaches to this case.

The few cases that are to be met with, of defeasible purchases, and in which the equity of redemption is said to be destroyed, after the limited time, by agreement of the parties, are cases in which there was a great lapse of time between the forfeiture and the application to redeem. *Floyer* v. *Lavington*, 1 *P. Will.* 268. *Ensworth* v. *Griffith*, 1 *Bro. Pa. Ca.* 149. *Tashurgh* v. *Echlin*, 4 *Bro. Pa. Ca.* 142. 1 *Pow. on Mort.* 4 *Ed.* 169 *to* 184; and Mr. *Powell* admits, in page 183, that the intention of the parties must be clearly proved, or necessarily implied, otherwise they will not be taken out of the operation of the general rule. The intention of the present parties, is so far from appearing to make this assignment a defeasible purchase, as contradistinguished from a collateral security for a debt, that it is manifest, from a review of the case, that the assignment was made to secure 100*l.* as part of the bond, and by that means the respondent obtained the indulgence of another year to meet the execution.

My opinion, therefore, is, that the decree is correct, in attaching the right of redemption to the interest assigned, but as the 1400 acres have since been sold by the appellant, and, as we must intend, to a *bona fide* purchaser without notice, the only

question is, as to the measure of compensation which the respondent is entitled to receive.

It will be perceived, from the view I have taken of the transaction, that the respondent is not entitled to redeem, without paying to the appellant the 100*l.* with interest from the date of the assignment. That sum, therefore, must be deducted, from the amount of his compensation. The only point of any difficulty, is that of settling the time at which the value of the 1400 acres, is to be computed. If the appellant had retained the lands till 1796, when the respondent demanded a release of them, he would have been obliged to restore the lands, or their *then* value, exclusive of improvements ; but he had previously sold them to a third person for 500*l.* which he states to have been the highest price which could be obtained, and that when he sold them, he did not suppose the respondent had, or pretended to have, any claim to the lands. As the respondent assigns no reason why he lay by till 1796, I incline to the opinion, that, under the circumstances of this case, the price that the appellant procured for the lands, would form the most equitable rule of computation. He appears to have sold the lands, under a belief that they were absolutely his.

My opinion accordingly is, that the appellant be decreed to account to the respondent for 500*l.* being the sum for which he sold the 1400 acres, together with interest from the time of the sale, which was on the 1st *December*, 1792, and costs both in this court and the court below, and that the appellant be allowed against that sum 100*l.* with interest from the 19th of *September*, 1789, and that the court below, be di-

fected to execute this decree, and that the decree below, be, in all other respects, reversed.

<div align="right">Judgment accordingly.</div>