ARGUED AND DETERMINED

AT

# NISI PRIUS.

SITTINGS AFTER MAY TERM, 1808, AT NEW YORK.

CORAM MR. JUSTICE VAN NESS.

———◆•◆———

## CUMMINGS *against* FISHER.

The protest of a promissory note is no evidence by itself. The demand and notice must be proved, as if no protest had been made. Entries made by a clerk, in the notary's books, cannot be read in evidence, when such clerk is abroad.

Where the maker of a note is notoriously absent, in a foreign country, diligent inquiry for him need not be shown.

When the maker of a note is abroad, and, at the time of making the note, had left off business, &c., and had no office, at the time the note became due, at the place where it was payable, demand need not be made at his last place of residence.

Where no demand has been made of the maker, on account of his absence abroad, the averment of presentment, &c., in the ordinary form is sufficient.

The parties, maker and indorser of a promissory note, may legally stipulate with each other, by parol, that there shall be no recourse over, under certain circumstances; but an indorser is not a competent witness to prove this agreement.

1

Cummings v. Fisher.

ASSUMPSIT, on three promissory notes, made in New York, by Elliot Hackley in favor of the defendant, by him indorsed to Richard S. Hackley, and by him to the plaintiff.

Plea, the general issue.

The plaintiff produced in evidence, a protest of one of the notes, upon the face of which it appeared, that at the time the note became payable, due diligence had been used to find the maker, Elliot Hackley, and that he was, at that time, resident in France. The notary's clerk, who had made the search for the maker, having left the city for foreign parts, some few days before the trial, the plaintiff offered in evidence the entry made by this clerk in the books of the notary, showing the fact of search for the maker, and notice to the indorser, the defendant.

VAN NESS, J. · This testimony is altogether inadmissible. The protest of a promissory note is no evidence by itself.(1)

(1) The solemnity of a protest is unnecessary in the case of a promissory note or an inland bill of exchange. Kydd on Bills, 142; 6 Mod. 80; *Union Bank* v. *Hyde*, 6 Wheat. 72; *Nichols* v. *Webb*, 8 Wheat. 326. And consequently, in those cases, a protest, if made, is no evidence of the facts contained in it, and the plaintiff is bound to prove presentment *aliunde*. The protest, however, is essential to a recovery on a foreign bill of exchange, against the drawer or indorser on the default of the drawee, and must always be alleged in the pleadings. Kydd on Bills, 142; Chitty on Bills, 240. If omitted, the defect must be taken advantage of by special demurrer. Doug. 634, n. 144.

In an action on a foreign bill of exchange, the production of the protest is sufficient proof of the averment of presentment and protest. The earliest reported case, on this point, is an anonymous decision of Lord C. J. Holt, 12 Mod. 345. In that case it was insisted that the plaintiff should prove the instrument of protest, or at least give some account how he came by it; but Holt ruled it to be unnecessary, for that (he said) would destroy commerce and transactions of this nature. This decision has been constantly observed

The demand on the maker, and notice to the indorser, must be proved, as if no protest had been made. The entries made in the notary's register by the absent clerk, who performed the services, cannot be received as evidence of those facts.(2)

in practice. Bailey on Bills, 119 ; McKinnon Philos. of Ev., 36 ; Chitty on Bills, 490.

This rule, however, is applicable only to foreign bills, protested abroad. Thus, in the case of *Chesmer* v. *Noyes*, (4 Camp. 129,) which was an action on a foreign bill of exchange, drawn at St. Croix upon a person at Bristol, it became material in the course of the trial, to show that the bill had been presented for payment. For this purpose the plaintiff's counsel offered as evidence, a notarial protest under seal, stating the fact of the presentment, in the usual form ; and contended that, by the usage of merchants, a protest under a notary's seal is evidence of the dishonor of foreign bills of exchange —Lord Ellenborough. The protest may be sufficient to prove a presentment, which took place in a foreign country, but I am quite clear, that the presentment of a foreign bill in England, must be proved in the same manner as if it were an inland bill, or a promissory note.

(2) In the case of *Cooper and Marsden*, (1 Esp. Cas. N. P. 1,) the entries made by a clerk who was abroad at the time of the trial, were offered in evidence, upon proof of his hand-writing, on the ground that the case was analogous to that of a witness to a deed or other instrument. But Lord Kenyon overruled the testimony, and observed, that the rule of evidence was clear, that entries in the books of bankers or persons keeping books, respecting their trade or business, could only be proved by the clerks who made the entries, inasmuch as they might give some material evidence independent of the entry. If a clerk is abroad, a commission ought to be issued to examine him. If he is dead, evidence that the entries are in his hand-writing, may be received in certain cases, and under certain circumstances ; but such evidence can never be conclusive. Lord Holt, however, seems to have entertained a different opinion. In the case of *Pitman* v. *Madox*, (1 Lord Raymond, 732, Salk. 690 ; Holt, 298) the plaintiff produced in evidence his shop book, written by one of his servants, who was dead, and upon proof of the death of the servant, and that he used to make such entries of debt, it was allowed, by Holt, C. J., to be good evidence, without proof of the delivery of the goods. This decision may possibly be supported by the statute, (7 Jac. 1, ch. 12.) which enacts that a tradesman's shop book shall not be evidence after a year. And from the language of the report, this decision seems to

The same clerk had made the same inquiry for the maker at the time the second note became payable, but notice to the indorser had been given by another clerk, who testified to the fact.    The plaintiff then proved, that at the time this note became due, the maker's absence from the city

have been made with reference to that statute.  Without the aid of that statute, it certainly would not be correct.  Buller places it entirely on that ground.  Bull. 282.  In this state, where that statute does not exist, the decision of Lord Holt cannot be considered as law.  Certain entries made by a deceased clerk are, however, admissible as *prima facie* evidence *ex necessitate*, on proof of the hand-writing of such clerk, his usual course of doing business, and his general punctuality : such as entries of the delivery of notices, or transmission of letters ; but it is presumed they never can be received as evidence of contracts made.

Thus, in *Pritt et al* v. *Fairclough et al.*, (3 Camp. 306,) which was an action for not accounting for goods, sent out by the plaintiff from London, to be sold on commission, by the defendant, in the West Indies, a notice was served on the defendant, to produce all letters written by the plaintiff, and as letters were given in evidence, written by the defendant, to the plaintiff, acknowledging the receipt of a letter from the plaintiff, dated 18th December, 1807.  This letter, which was alleged to contain a copy of the invoice of the goods, together with the directions for selling them, being called for, was not produced.  The plaintiff then proposed to give secondary evidence of its contents, and, with this view, called one of his clerks, who swore, that when this letter was written, and a considerable time before and after, one Forbes was entering clerk in their house, that the constant course of business was for the senior partner to write all the letters, which were then handed over to Forbes, who copied them in the letter-book, and, immediately after, sent them off by the post.  The witness had frequently compared the copies so taken, with the originals, and always found them correct.  In the book which was produced, there appeared, entered in the hand-writing of Forbes, what professed to be a copy of a letter, from the plaintiff to the defendant, dated 13th December, 1807 ; the witness never saw the original, but he had no doubt, from the course of business, that an original letter of the same tenor, with the copy, had been written by the senior partner of the house, and regularly forwarded to the defendant the day it bore date.  The question was, whether the entry in the letter book, in the hand-writing of Forbes, could under these circumstances be read, to prove the contents of the letter.

and residence in France, were notorious; and contended, that under such circumstances, no demand on the maker, nor search for him was requisite; and that it was sufficient to give notice at once to the indorser.

*Lord Ellenborough:*—The rules of evidence must expand, according to the exigencies of society. I remember the innovation of receiving evidence of the hand-writing of attesting witnesses abroad, to prove the execution of deeds. This entry, I think, is reasonable evidence, to prove the contents of the letter of the 18th December, 1807, which the defendants acknowledged they received, and which they do not produce on a notice for that purpose. We know, that it is the habit of merchants to keep such a book, and a witness has sworn that the book in question was kept with great punctuality. Therefore, if the éntry of Forbes' hand-writing were not admitted, there would be no way in which the most careful merchant could prove the contents of a letter, after the death of his entering clerk. I will, therefore, allow the entry to be read as *prima facie* evidence, and the defendant may rebut it by producing the original.

So, also, in the case of *Hagedorn* v. *Reid,* (3 Camp. 377,) the entry of a deceased clerk of a merchant in the letter book, stating the transmission of the original letter to the person to whom it was written, was received in evidence by Lord Ellenborough, as proof that it was made in the usual course of the merchant's business. Entries made by the party, himself, in his own books, in the usual course of his business, are sometimes admissible in evidence. They are admissible in England when against the interest of the party making them. 7 East. 290; 10 East. 109; 15 East. 32; 1 Campb. 367. But the general rule of the English law is to deny the admissibility of such entries as proof, when in favor of the party, even in the case of a regular tradesman's book 8 Johns. 212.

The rule, however, adopted on this subject by the supreme court of this state, in the case of *Vosburgh* v. *Thayer,* (12 Johns. 461,) is totally variant from the rule of the common law. It is there held, that entries in books of account, relating to transactions in the usual course of business, are admissible evidence under certain limitations and restrictions. Which limitations and restrictions are thus expressed: "They are not evidence in the case of a single charge, because there exists, in such case, no regular dealing between the parties. They ought not to be admitted where there are several charges, unless a foundation is first laid for their admission by proving that the party had no clerk, that some of the articles charged have been delivered, that the books produced are the account books of the party, that he keeps fair and

Cummings v. Fisher.

*Emmet*, for the defendant, contended that the strict rules of commercial law, relative to notes, ought to be observed; that the rule contended for by the plaintiff, was an innovation; that the court had frequently felt the inconvenience

honest accounts; and this by those who have dealt and settled with him. Under these restrictions, from the necessity of the case, and the consideration that the party debited is shown to have reposed confidence by dealing with and being entrusted by the other party, they are evidence for the consideration of the jury." See, also, on this subject, *McCoul* v. *Le Kamp*, 2 Wheaton, 111.

This rule has not met with the warm approbation of the bar in this commercial community, but has, on the contrary, been watched with great jealousy, and confined to cases of strict necessity. Hence, very little is to be found in our books, on this subject, since the case of *Thayer* v. *Vosburgh*. One case preceded it, (*Case* v. *Potter*, 8 John. 212,) and *Linnell* v. *Sutherland*, 11 Wend. 569; *Sickles* v. *Mather*, 20 Wend. 72; *Corning* v. *Ashley*, 4 Denio, 354, and *Larue* v. *Rowland*, 7 Barb. 107, have followed it, and in some measure restrained it. I do not know that it has (with these exceptions) commanded much attention. It has probably been confined, in its application, to the minor courts and to the humbler classes of society, which were chiefly in the view of the court, when it was adopted, and where the necessity which originated the rule would most frequently occur.

In the less commercial states of the Union, it has met with more favor. In some, it has been the subject of legislation; in others, of judicial decision; and the cases on this head, if collected, would form a volume.

The curious and diligent student will find them laboriously collected, by Judge Cowen, in a learned note to 2 Phil. on Ev., 682, and by Professor Greenleaf, in his valuable treatise on evidence, 1 Greenl., p. 154, 3d ed.

The innovations of the code of procedure, by enabling the assignee of a chose in action to bring the suit in his own name, and use the assignor as a witness, have, perhaps, merged this rule in effect in its more sweeping provisions. Code of Proc., secs. 111, 398, 399.

The admissibility of memoranda, made by notaries or their clerks in the course of business, has been the subject of much discussion since the trial of this case.

I. In 1819 it was held, in the supreme court of Massachusetts, that the book of a messenger of a bank, in which he entered memoranda of demands and notices for the promisers and indorsers upon notes left with the bank for collection, was, after the death of such messenger, safe evidence to go to the

resulting from a relaxation of those rules; that although the present case might be considered as strongly marked, yet others, less so, would soon be brought within the letter of the rule, if it should now be established.

jury on this point, whether the requisite notice was given or not. *Welsh* v. *Barry*, 15 Mass. 384. See also *Nichols* v. *Goldsmith*, 7 Wend. 160.

II. In 1822, the supreme court of the state of New York, held that the entry of a notary, in his register, that he had made diligent search and inquiry after the maker in the city of New York, where the note was dated, in order to demand payment, and that he could not be found, was, after the death of such notary, sufficient evidence of due diligence, as to the demand of payment; but, that an entry that he had given notice to the indorsers by putting it in the post-office, without stating to what place it was directed, was a nullity. *Halliday* v. *Martins*, 20 John. 468; see also *Butler* v. *Wright*, 2 Wend. 369.

III. In 1823, it was under consideration in the supreme court of the United States, and it was held there in the case of *Nicholls* v. *Webb*, that an entry made by a notary, in his notarial register, in the margin of an original protest, that he had, on a certain day, duly notified the indorser of the non-payment of the note, was admissible evidence, liable, however, to be impugned by other evidence, and to be encountered by any presumptions or facts which might diminish its credibility. *Nicholls* v. *Webb*, 8 Wheat. 336·

IV. In 1826, the subject was again before the supreme court of the state of New York, and it was held that the books of a deceased notary might be received, when the entries were made by himself; but when made by a clerk, who is still alive, though beyond the jurisdiction of the court, they were not admissible, although such clerk could not be found on diligent inquiry. *Wilbur* v. *Selden*, 6 Cow. 162.

V. The legislature of the state of New York, since the trial of this cause, has introduced some very important qualifications of the law as stated in these notes.

In the revision of 1830, it is enacted that upon proof of the signature of the notary to the original protest of an inland bill under his seal, and, upon proof of such seal, it shall be presumptive evidence of the fact of any demand of acceptance or of payment, stated in such protest, in three cases.

1. In the case of the notary's death.

2. In the case of his insanity.

3. In the case of his absence or removal, so that his personal attendance, or his testimony, cannot be procured in any mode provided by law.

VAN NESS, J.   Where the maker is notoriously absent in a foreign country, there is no need of showing diligent inquiry for him.

On the third note, it appeared that the notary had made inquiry for the maker at the Tontine coffee-house, and at the Banks, and was there informed of his residence in France.   It also appeared, that he was an unmarried man; that he had declined business some months previous to the date of the note, and that, at the time the note became payable, he had no office in the city for the transaction of business.

*Emmet.*   Demand ought to have been made at his last place of residence, where funds might have been provided.

VAN NESS, J.   The evidence is sufficient.   A demand,

In no other cases can the protest of an inland bill be evidence in any court of this state, by this statute.   2 R. S., p. 283.

In 1833 a further inroad was made on the law of evidence, on this subject, by the same body.   It was then enacted, that, in all actions at law, the certificate of a notary, under his hand and seal of office, of the presentment by him, of any promissory note or bill of exchange for acceptance or payment, and of any protest of such bill or note for non-acceptance or non-payment, and of the service of notice thereof, on any or all of the parties to such bill of exchange or promissory note, and specifying the mode of giving such notice, and the reputed place of residence of the party to whom the same was given, and the post-office nearest thereto, shall be presumptive evidence of the facts contained in such certificate.   Laws, 1833, c. 271.

It is very obvious that such a provision might open the door to much fraud and injustice, and might, in its effect, be unconstitutional by withdrawing an important fact from the proper jurisdiction of a jury.   Hence it is provided in the same law, that this provision shall not apply to any case where such fact is contested.   The defendant, however, is required to show his intention to controvert the fact, by annexing to his plea an affidavit denying the receipt of notice of non-acceptance or non-payment.   Ib.

Cummings v. Fisher.

in this case, at the maker's last place of business was un-necessary.(3)

The defendant then contended, that the averment of a demand on the maker, as laid in the declaration, was not supported by this testimony. The averment was in the common form, "that the note had been presented to the maker for payment, who refused," &c.

(3) I know of no case which has in terms gone quite as far as the present, nor any where the circumstances were exactly similar—the rule generally adopted is, that if the maker or drawee cannot be found at the place where the note states him to reside, and it appears that he never lived there, or has absconded, then the bill is to be considered as dishonored; but if he has only removed, it is incumbent on the holder to endeavor to find out to what place he has removed, and to demand payment there. Chitty on Bills, 70, Am. ed., 1803; Bailey on Bills, 58. If he has removed out of the realm, then a demand at his last place of residence is sufficient. Ib. In this case, the maker, for some time previous to the note coming to maturity, was not strictly domiciled and had no office for the transaction of business in the city; and, being notoriously abroad when the note became due, any formal demand would, indeed, have been idle. Livingston, J., in *Stewart* v. *Eden*, in speak-of the diligence to be used to affect an indorser, observes: "We must take care that, while proper diligence is imposed on the holder of negotiable pa-per, we do not exact from him every possible exertion that might have been made. If he has done all that a diligent and prudent man could naturally and fairly do, under like circumstances, we should be satisfied and not ask for more." The same rule of diligence must be applicable to the demand on the maker.

Since the preceding note was written, the case of *Anderson* v. *Drake*, (14 Johns. 117,) has been decided, which reduces the law to greater precision as to the duty of a holder of paper, upon the removal of the maker or drawee. And from that case the following rules are to be gathered.

If the note is made payable at a particular place, a demand of payment at that place is sufficient to charge the indorser.

If a note bears date at a particular place, and there is no place of pay-ment specified in the note, the place where the note bears date cannot be considered as the place of payment, so as to release the holder from the obli-gation of seeking the residence of the maker and making a demand there, in the event of his removal.

VAN NESS, J. It is always safest to declare according to the fact. In the case of *Stewart* v. *Eden*, at the last term, this point was considered, and although it came up collaterally, still I feel myself so far bound by it, as not to overrule it at *nisi prius*. According to the opinion of the court in that case, the averment here is sufficiently proved. My own individual opinion, however, is certainly in favor

When a note is not made payable at any particular place, and the maker has a known and permanent residence within the state, the holder is bound to make a demand at such residence in order to charge the indorser.

If the maker, however, has removed out of the state, a demand at the place where the note purports to have been made, is sufficient, if no place of payment is specified.

In carrying the law down to this time, it must be observed that the notes in this case were all dated in New York, but no place of payment was specified in them. Much inconvenience arises from this form of commercial paper, the law requiring due diligence in the presentment. The place where the note bears date may be *prima facie* evidence of the residence of the maker; but when he was notoriously resident, at the time, in another, and even a foreign country, demand must be made there.

The last case, on this subject, lead to a division of opinion, in the court of appeals. A promissory note was made, indorsed and dated in the city of New York; the maker and indorser, however, were residents of Matamoras, in Mexico. In an action, against the indorser, it was held that where the maker has a known place of residence, at the time of making the note, and there has been no change of circumstances, however wide asunder the maker and holder may live, demand must be made of him, at his place of residence, in order to charge the indorser. That the inconvenience can only be avoided by fixing the place of payment in the note, or by a special indorsement, waiving demand. In speaking of the exceptions to the rule, it is there said, by Jewett, C. J., "It is a question of diligence, and if a demand is found to be impracticable, proper efforts having been made for this purpose, the indorser will be still held liable, due notice having been given to him." These exceptions are enumerated in the opinion of the court, delivered by Mr. Justice Beardsley, in *Taylor* v. *Snyder*, (3 Denio, 181,) and embrace cases under the following circumstances:

1. When the maker has absconded, this will ordinarily excuse a demand, and notice of the fact is sufficient to hold the indorser.

of the defendant, and so, in my judgment, is the whole current of English authorities.(4)

The defendant then offered to prove by Richard S. Hackley, one of the indorsers of these notes, that Elliot Hackley, and Daniel Fisher, the defendant, had been in partnership, and had become insolvent; that the plaintiff, and Richard S. Hackley, being the friends of Elliot Hackley and

2. When the maker is a seaman, on a voyage, having no domicil in the state, the indorser is liable without a demand. *Aliter*, if he has a domicil.

3. When the maker has no known residence or place at which the note can be presented for payment.

4. When a note is made by a resident of the state who, before it is payable, removes from the state, and resides permanently elsewhere.

Gardner, J., who dissented from the judgment of the court, was of opinion that expediency and public convenience required that the necessity of a personal demand should be confined to cases where the maker resides within the states or territories of the Union. *Spies* v. *Gilman*, 1 Comst. 321; 1 Am. Lead. Cases, 214.

(4) In the case of *Stewart* v. *Eden*, (2 Caines, 124,) the declaration was in the common form, stating a demand on the makers, and their refusal to pay. Under this averment, the plaintiff proved that the makers of the note, on inquiry at their store, could not be found, and that payment was thereupon demanded of a clerk, who said they were out of town, and had left no instructions to pay the note. One of the points raised by the defendant, on the argument of this case, was the variance between the averment and the proof. This question therefore came directly before the court, and is one of the points expressly considered and decided by the court in pronouncing judgment. According to the decision in this case, a special averment, that the maker could not be found, is unnecessary, it is enough to aver presentment, and refusal in the common form, which averment will be sufficiently proved, by evidence of due diligence. Some of the English precedents certainly contain a special averment, " that the plaintiff at, &c., made inquiry after the maker, with intent to demand payment, but he was not then to be found," &c. 1 Wentworth, 307, ib. 312. And Mr. Wentworth, in a note to the precedent, (p. 307,) says it is sufficient to aver that drawee *non fuit inventus*, without stating that inquiry was made after him, (Carth. 509, 510;) but it is safest to insert it, as the books seem to vary: and in *Leeson* v. *Piggot*, at *nisi*

Daniel Fisher, had agreed to assist them in the discharge of their debts; that it was thereupon agreed between all the parties, that Hackley and Fisher's debts should be equally divided, and Elliot Hackley's notes, with the indorsements of Fisher, R. S. Hackley, and the plaintiff, given for the one-half; and D. Fisher's notes, with the indorsements of E. Hackley, R. S. Hackley, and the plaintiff, for the other half; and that if, in the event, either R. S. Hackley, or the plaintiff, should be compelled to pay their several indorsements, they should have no recourse over against Fisher, or E. Hackley.

*D. B. Ogden* and *Sanford*, for the plaintiff, objected to the admissibility of the testimony.

1. Because R. S. Hackley, the witness, stood as an indorser on the papers, and his testimony would go to take away the remedy upon it.   *Whittenbury et al.* v. *Jackson et ux.* executors, &c., 1 D. & E., 298;  *Baker* v. *Arnold*, 1 Caines, 270.

2. That the agreement offered to be proved by this testimony, was a *nudum pactum*, without consideration, and, therefore, void.

*prius* in 1788, it was expressly held, that, on an allegation that the bill or note was presented, and acceptance and payment refused, the plaintiff cannot give in evidence, that the drawee or maker could not be found.   Baily, 110.  Livingston, J., however, in the case of *Stewart* v. *Eden*, remarks, that the precedents generally contain the averment of presentment and refusal, and if, in some, the whole matter intended to be insisted on as evidence of demand is set forth, it only proves that either form is good.   And as to the case of *Leeson* v. *Piggot*, he says, this is but a *nisi prius* decision, on which it would be capricious to alter a practice of declaring which has been pretty uniformly followed since the introduction into general use of bills of exchange and promissory notes.   *Greenway, et al.* v. *Hindley, et al.*, 4 Camp. 52;  *Bruen* v. *Astor*, post, 133;  *Bowes, et al.* v. *Howe*, 5 Taunt. 30.

3. That this testimony went to show a parol agreement to pay the debt of another.

*Emmet*, for the defendant, contended, as to the first point, that the rule, that no man is to be admitted to invalidate his own paper, applies only to cases of turpitude, where the witness attempts to show, that the instrument was illegal and void, *ab initio*. Peake's Ni. Pri. Cases, 6; *Jordaine* v. *Lashbrook*, 7 T. R., 601. The testimony now offered, merely shows matter of compact; and, therefore, the indorser ought to be received to state it.

As to the second and third points, raised by the plaintiff's counsel, it was contended that the facts offered to be proved by the witness, would be sufficient evidence of a waiver of the defendant's liability by the plaintiff, and this waiver, being made by parol, before breach, was sufficient. Chitty on Bills, 83.

VAN NESS, J. This case comes within the expressions used by the court in *Arnold* v. *Baker*, although, perhaps, it may not be within the general policy of that case. I must, therefore, decide that Richard S. Hackley is not a competent witness.(5) Upon the other points, as to the

(5) The evidence, offered in this case, went to invalidate the instrument as to its ordinary legal operation, by showing that, although the defendant had indorsed the note, he was not liable to the plaintiff as such indorser. An indorser was not a competent witness to prove the defence within the broad rule laid down in *Walton* v. *Shelly*, (1 Durnf. and East. 300,) and adopted in *Winton* v. *Saidler*, 3 Johns. Cases, 185 ; and in *Baker* v. *Arnold*, 1 Caines, 120. This rule is not confined to cases of turpitude merely, but is general, that no party, who has signed a paper, shall ever be permitted to give testimony to invalidate that instrument which he hath so signed. This rule, however, has been exploded in England, in the case of *Jordaine* v. *Lashbrook*, (7 Durnf. and East. 601,) in which the case of *Walton* v. *Shelly* is

Cummings v. Fisher.

admissibility of the facts themselves, I have no doubt. The parties, at the time they consummated the contract, might well regulate, by parol, their respective liabilities. If the defendant can show this agreement by other testimony, it will be decisive.

The defendant failed to do so, and the plaintiff had a verdict on two of the notes.

*Sanford* and *D. B. Ogden*, for the plaintiff.

*Emmet*, for the defendant.

overruled. In the case of *Winton* v. *Saidler*, and *Baker* v. *Arnold*, the supreme court adhered to the rule in *Walton* v. *Shelly*, and rejected the case of *Jordaine* v. *Lashbrook*. A distinction, however, must be noted under this rule, between showing a note legally discharged, and destroying its original legal effect. A party to a note is an admissible witness for the first purpose, as to show it paid, &c., (*Charington* v. *Milner*, Peake, N. P., 6, and *Phetheon* v. *Whitmore*, ib. 40; *Humphrey* v. *Moxon*, Peake, 52; *Woodhull* v. *Holmes*, 10 Johns, 231; *Skelding* v. *Warner*, 15 Johns. 270,) but not for the second.

In 1825, the supreme court overruled the case of *Baker* v. *Arnold*, and adopted the opinion of Lord Kenyon, in *Jordaine* v. *Lashbrook*, in opposition to that of Lord Mansfield, in *Winton* v. *Saidler*, to which that court had before conformed. The rule, therefore, now is, that a party to negotiable paper, is a competent witness to prove illegality in its formation. If there is any turpitude in the transaction, it affords an objection to his credibility with the jury. 1 Greenleaf on Ev., sec. 384; *Stafford* v. *Rice*, 5 Cow. 23; *Williams* v. *Walbridge*, 3 Wendell, 415.

The Code of Procedure declares that no person, offered as a witness, shall be excluded by reason of his interest in the event of the action. Sec. 398. And the same rule has been introduced into the law of England, by statute. 3 & 4 W. 4, ch. 42, sec. 26; and 6 & 7 Vic., ch. 35, sec. 1. The wisdom of this very great innovation remains to be proved. The rule may be safe enough in the hands of an intelligent judge, accustomed to weigh evidence and detect perversions of truth; but, when intrusted to a mixed jury, it may be otherwise. Whether the proviso in the English statute, and the reservations in our own, have sufficiently guarded this rule, remains to be seen. See the matter fully discussed, by Hand, J., in *Fitch, et al.* v. *Bates*, 11 Barb. 471; *Vide etiam, Montgomery County Bank* v. *Marsh*, ib. 645.