*Thompson, J.
This application is made on the following grounds
1. That the inquiry offered to be made of the plaintiffs’ attorney, was improperly overruled by the court.
2. That the testimony of Boswell Lombard, the endorser, ought to have been admitted under the circumstances mentioned in the case.
With respect to the first point, I think the inquiry offered *341 to be made of the plaintiffs’ attorney, was manifastly improper, and to have permitted it, woidd have been a violation of that rule, which the policy of the law has adopted, that an attorney shall not be permitted to betray a secret with which he has been intrusted by his client. This is the privilege of the client, and not of the attorney. It is necessary to be strictly observed, in order to protect a party in the full disclosure of all the circumstances relative to his cause, without the hazard of having them divulged. This restriction, however; does not extend to facts that come to the attorney’s knowledge before his retainer, or to information derived from any other source than from his client. The inquiry offered to be made from the attorney, was whether the note on which the suit was founded, was endorsed to the plaintiffs, when the suit was commenced, with the avowed object of falsifying the endorsement, and showing the note to be given for an illegal consideration. To judge if Mr. Bacon could answer this question, it becomes '-'material, previously to know at what [*267] time, and from whom, he derived his information; if from his client, and after the commencement of the suit, or after he was retained to prosecute it, the inquiry, I think, would have been improper. Mr. Bacon, on examination, declared, that he knew nothing respecting the note previous to his being retained in the cause, and that all his information relative to it was derived from his client. The authorities cited from Buller and Espinasse, instead of contravening the rule above laid down, are in direct confirmation of it. The cases there put suppose the attorney a witness to a deed produced in the cause, in which case he may be examined as to the time of execution. So, if the question was about a rasure in a deed, or will, he might be asked whether he had ever seen such deed or will in any other plight. And the reason why such question might be asked is ai, the same time given, to wit, because they are facts of his own knowledge, not derived from his client, which manifestly shows the inquiry was relative to facts which came *342 to Ms knowledge previous to Ms retainer, or in some other way than from his client. Was that the case in the present instance ? Directly the reverse. The attorney expressly declared that all his knowledge respecting the business war derived from his client.
The next question for examination is, "whether -Boswell Lombard, the endorser of the note, was a competent witness to falsify his own endorsement, and prove that it was made after it fell due, "and also after the commencement of the present action, with the avowed object of showing that it was m'ade on an illegal consideration, and, of course, void ah initia. This point I think settled, by the principles adopted by this court in the case of Winton v. Saidler, (July term, 1802.) In that case, according to my understanding of it, the court decided, that upon principles of public policy, a person whose name appeared upon a negotiable note, and who had contributed to give it currency and circulan on, should not be admitted as a witness to invalidate it. In that "'case the witness was called to prove the note was made upon a usurious consideration, and of course void .in the hands of an innocent endorser. In the present case, [*268] the object *avowed was general, to show the note was illegal and void. It is not explicitly stated whether the illegality of the note was to be proved by the endorser, or by other testimony. If by the former, he would most clearly be incompetent within the decision in the case of Winton v. Saidler ; and I cannot discover why the same principles of policy do not exist to exclude him from proving a collateral fact, for the express purpose of destroying the note: The note purports to have been endorsed before it fell due. The fact to be established by the endorser was, that it was transferred after it fell due, and, of course, open to impeachment. This was an indispensable pre-requisite; it was an entering wedge to effect its destruction. < If this note was founded on an illegal consideration, the same malady would attend it, if it should pass through the hands of a dozen innocent endorsees, who had taken it *343 in full confidence that it was what it purported to be; and having been endorsed before it fell due, the consideration could not be impeached.^ For the protection, therefore, of innocent endorsees, I think a party to a note ought not to be permitted to give the lie to his own acts, and contribute to the desi ruction of a negotiable note which he has circulated as genuine in all its parts. To say that a party to a note shall be competent to open the door, and progress one step towards the destruction of his own paper, and there stop and become incompetent, will, I think, be productive of uncertainty and endless confusion, and will require refinements, and distinctions, too nice and subtle for general rules of evidence. If Boswell Lombard was the witness to prove the illegality of the note, he was an incompetent wit ness within the terms of the decision in Winton v. Saidler. If he was called to prove a collateral fact, indispensably necessary to be established, and thus aid and assist in in validating his own paper, I think he was incompetent wiiiiin the reason and spirit of that decision. It remains only to be examined, whether he ought not to have been admitted, after the defendants’ counsel had wmived all pretence of impeaching this note, or showing it had been paid, and confined themselves to the simple inquiry, whether the note was endorsed *after the commencement of the [*269] suit. I think, considering it merely as an abstract question, the witness was incompetent to answer it. But the defendants here had abandoned all defence on the merits, and the only object in view being to turn the plaintiffs round to a second action, every fair and reasonable presumption ought to be made in favor of the recovery. If the plaintiffs were in possession of this note, as their own property, and in their own right, when they commenced their suit, the simple act of endorsing,(a) and thereby complying with the forms of law afterwards, ought not to defeat their action. It is not presumable they could *344 commence a suit on this note before they had it. Independent of this, however, it appears from the case, that on the 4th of March, 1799, some time previous to that when the endorsement even purports to have been made, the defendants, by letter; recognized the plaintiffs’ right to this note, made propositions for payment, and treated them in every respect as the real owners. Under' these circumstances, I think the time when the endorsement was in fact made, whether before or after the commencement of the .suit would have been immaterial. And it never can.be sufficient grounds for granting a new trial, to ascertain an immaterial fact.
I am, therefore, of opinion, that the plaintiffs ought to have judgment upon the verdict of the jury.
Livingston, J.
The defendants, on the trial of this cause, insisted that the note was endorsed after commencement of the suit, and to prove this fact produced the endorser, whose testimony was not received. Whether the endorser be a proper witness for this purpose, is unnecessary now to decide; There is great danger in permitting any one whose name appears on a note, which is the subject of controversy, to be a witness at all. The court will not receive him to impeach its validity; and when a fit occasion offers, it will merit serious consideration whether it will not be best to exclude him altogether. It is true, that a man who comes forward merely "to prove when he put his name on a note, does not excite so much detestation, as one who [*270] basely obtrudes himself *to destroy a security to which he has given currency, by affirming that it was given on an illegal, or without • any, consideration. The rule of the civil law, therefore, which says, '•'■nemo albgans suam turpitudinem est audiendus,” is adopted both in England and in this state: so also in Pennsylvania, the endorser and original payee was not permitted to invalidate his own instrument, by establishing a want of consideration, although he was a certificated bankrupt, and not interested. *345 2 Dall. 194. For my part, it would give me less offence to see such a man expiating his fraud and effrontery in a pillory, than attesting heaven, in the sanctuary of justice, to the truth of asseverations, which at once evince his turpitude, and destroy his credit. Even in the case before us, the payee was to prove a fact different from the import of his endorsement, which, when not dated, is supposed to be made oh the same day with the note, and is generally so alleged in declarations. There was, then, some degree of turpitude in first putting his name on a note to enable the plaintiffs to recover, and then appearing at the' trial to destroy a right of action created by himself. But without hazarding an opinion on this point, I think the fact offered to be proved, considering the use to be made of it, was irrelevant. It is conceded that the defendants did not wish to ascertain the precise time of the endorsement with a-view to any substantial defence, of which the-makers might have availed themselves against the payee, or against the endorser, if the negotiation took place after the note fell due. Their sole object was to show that* the plaintiffs were premature in the commencement of their suit; because, at that time, there was no endorsement on the note. The effect of this would be to drive the plaintiff to another action, in which it is admitted they must succeed. This being the avowed object, the testimony was properly rejected. It is not to be presumed that any man will institute an action on a note not in his possession, and in which he has no interest. Such an attempt can only be followed by certain defeat, and considerable expense. But a note may be delivered to the plaintiffs before a suit. be commenced, *and the payee neglect to endorse it. [*271] Why should a court, in such case, prevent the plaintiff’s title being perfected by a subsequent endorsement, and thus protect himself against the heavy inconvenience of discontinuing his suit, or suffering a nonsuit, on the payment of costs ? A plaintiff is permitted to fill up a blank endorsement, or strike it out altogether in court, *346 to facilitate a recovery; but never is an inquiry made into the real time of making an endorsement, unless for the purpose of showing the consideration illegal, as between the original parties, or to pave the way for a defence which cannot be used against a holder who receives it bona fide, and before it falls due. If the defendants had not abandoned this ground, the proof would have been proper, and it would only remain to say whether it could be made by an endorser; but, having expressly waived every defence arising from the lateness of the 'endorsement, the evidence, in my judgment, was inadmissible. The rule I adopt is this; that a court will ever presume an endorsement to have been in season, and admit no evidence to the contrary, unless as introductory to a defence on the merits, but never for the single purpose of showing the suit was prematurely commenced. I had rather let the payee come in at the trial and put his name on the note for the furtherance of justice, than open a door to investigations of this kind.
But as the defendants did not relinquish the defence arising from an illegal consideration, until all their testimony to this point was rejected, it may be well to inquire whether the source from which-it'was offered to be drawn was proper.
Mr. Bacon, the plaintiff’s attorney, was produced only to ascertain the time of the endorsement. Whether his relation to the parties' exempted’ him from answering the questions proposed, is not absolutely necessary to decide; because, in the view which I have taken of this subject, these questions were impertinent, unless the illegality of the contract could be established. I think, however, that the judge did right in imposing silence on-him after his declaration, “ that he had no knowledge of the note, previous [*272] *to his being retained, nor of any circumstance relating to the matter in question, but such as had been confidentially communicated by the plaintiff-*.” The right which clients have to the secrecy of their counsel, *347 produces confidence and a full disclosure of every fact necessary to the latter’s forming a just estimate of their several cases; courts, therefore, are careful that this trust shall not be abused, and will not permit even willing witnesses, when thus connected, to disclose matters frankly confided to them in moments of doubt and difficulty. Whether he might have derived his information from other sources is here an immaterial inquiry; because, it is proved to have come directly from his client. Mr. Bacon might have advised the plaintiffs that they had a right, being in possession of the note, to commence an action, although it was then not endorsed, and take their chance in getting the payee’s endorsement afterwards. The fact, then, of its being unendorsed at the time of bringing the action if such were the case, was a secret intrusted confidentially to Mr. Bacon, and he ought not to be permitted, after giving such advice, and bringing the action, to defeat a recovery by his own testimony. I can hardly conceive a case in which the privilege of the client more powerfully interposes itself than in the one before us.
The only witness, then, by whom the contract could have been impeached, was the endorser; and he being a party to it, was properly rejected.
Upon the whole, my opinion is, that as no one was produced to invalidate the note, which at one time was the only defence set up, but the endorser, and as his testimony could not be received consistent with our decision in Winton v. Saidler, it became improper to show when the note was endorsed merely for the purpose of compelling the party to bring a new action. This principle is recognized by this court in the case of Platt v. Platt, in April term, 1795, Col. Cas. 36, and Hob. 199, cited in favor of it. “It is regularly true,” says that authority, “ that if the plaintiff will himself discover to the court any thing, whereby it may appear that he had no cause of action when he Commenced it, his trial shall abate; of his [*273] own showing it was against him." On this our *348 court, without coming to a decided judgment, intimated that the defendant could not avail himself of any such matter by plea, unless the plaintiff himself discover he had no cause of action at its commencement. And if not by plea, a fortiori, he ought not to be allowed to give it in evidence. That I may be well understood, I think it proper to repeat, that from the whole of this case, which is not very accurately drawn, it appears that the defendant had no other witness to impeach the consideration of this note but the payee, and that as he was properly rejected, or could not be admitted for that purpose, the defendants, in pursuing the inquiry as to the real time of the endorsement, had no other object in view but to turn the plaintiffs round, by'showing the action was prematurely commenced; for which single purpose I should have admitted no witnesses whatever to establish that fact. For these reasons, and as no injustice appears to be done, I am against a new trial.
Radcliff, J.
The note on which this action is brought fell due on the 31st March, 1799, or at the end of the three days of grace thereafter. The endorsement is • dated the 30th March, 1799.
It appears that on the 4th March, 1799, and previous thereto, there were negotiations between the plaintiffs (who afterwards became the endorsees) and the defendants, respecting the payment of the note; and also that a suit had been commenced before the present suit, in the name of Lombard, the payee, and discontinued on account of some unfair practice by the defendants, as was alleged by one of the witnesses. This evidence was not objected to, and these circumstances proved that the plaintiffs were privy to the original transaction, or acted as trustees for Lombard, the payee. On this ground alone, I am of opinion, enough was shown to entitle the defendants to go into evidence of the consideration of the note.
But the principal point I think is, that Lombard was a *349 competent witness to prove the time the endorsement was ^actually made. This would not im-' [*274] peach the validity of the note, and, therefore, is not within the decision of Walton- v. Shelly, nor of Winton ■ v. Saidler, the latter of which was determined in this court. It was merely preliminary proof} which, if it appeared that the note had been endorsed when overdue, would have enabled the defendants to go into other evidence to impeach it. If no other evidence could be produced to that effect, the note would still be valid, and the plaintiffs would be entitled to recover. The idea of policy on this subject, appears to me to be carried beyond the reason of the rule.
I also think that the questions put to the plaintiff’s at torney, whether he had before seen the note, and whether the name of Lombard was endorsed upon it at the time of commencing this suit, ought to have been answered. It would not have been a disclosure of the secrets of his client, within the sense of the rule which prohibits or excuses an attorney from making such disclosure. • He was not asked to discover any thing communicated confidentially, but to answer a fact which he must have known from his own observation, and which, from its nature, could not be a secret intrusted to him. The endorsement or transfer of a note is a public act, and the discovery by an attorney whether it existed or not, ought, I think, not to be liable to this objection. The authority of Buller, which has been mentioned, is, in my view, to the same effect. I im, therefore, of opinion, there ought to be a new trial. Bull. N. P. p. 284, 288; Esp. Dig. 717.
Kent, J.
The motion to set aside the verdict in this cause rests upon two grounds:
1. That the court overruled certain questions from being put to the plaintiffs’ attorney as a witness.
2. That they rejected the endorser as an incompetent witness for the purpose for which he was- called.
With respect to the second point, (for I shall pass by *350 the first at present 'as unnecessary to be considered,) I do not think that the decisions of this court in the cases of Winton v. Saidler, and Stewarts v. Currie, (July term, 1802,) go so far as to warrant a rejection of the endorser in the ■ present instance. In those cases, the maker of the [*275] note *in'the one, and the endorser in the other, were offered to prove the note to have been usurious. Those witnesses were therefore, called to invalidate the paper they had signed. So, in the case of Walton v. Shelly, (1 D. & E.,) upon the authority of which I presume the above decisions of this court were founded, the endorser, who was rejected, was called to prove the note void by reason of usury.
In all those eases the testimony of the witness produced went directly to destroy the paper. Here the question went no further than to defeat the present action, by showing that it had been prematurely brought. Proof that a note was endorsed after it was due, might indeed lei in the party ■ to an examination of the consideration. But this consequence does not necessarily follow. The object of the party may be merely to set up as a defence payment to the original payee. And if it did necessarily follow, still it ought not to exclude the. witness, because the testimony that he gives does not violate the sanction which his name had given to the paper. The sanction his name gives is, that the paper is valid, because the transaction is legal and honest,- and he must say nothing that contradicts this. Whether the date of the endorsement be, or be not, correctly filled up, is a matter in which the endorser has no concern, nor to which he is considered as having added his assurance, because it is now the established usage for the endorser' not to date his endorsement. It is generally in blan7c, and the holder fills up the endorsement afterwards, according to his convenience. The testimony of-the endorser, as to the time of. the endorsement, does not, therefore, as of course, or by any direct or necessary consequence, affect the validity of the note, or violate his plight *351 ed faith, to the world. And because it may possibly lead to other testimony that will impeach the note, is surely not enough to render the witness incompetent. It would be carrying the principle in Walton v. Shelly, and the decision of this court in pursuance of it, beyond all precedent, beyond every dictum, and would lead, as I apprehend, to manifest inconvenience in the administration of justice. *It has been the bent of the courts for a [*276] century past, to enlarge the rule respecting the competency of witnesses. It must be a present and vested, and not a future and contingent interest, that excludes a witness. He must be interested directly in the event of the cause, and not merely in the question put. These are instances in which the rule as to interest has been straightened, and defined with the utmost clearness and precision. And I could wish to see this other rule of witnesses being incompetent, on grounds of policy, rendered equally manageable, by being reduced to limits susceptible of equal definition and certainty. To do this, we must adhere strictly to the cases which produced the rule, and exclude only the witness who is called to impeach his own paper, by showing it to have been immoral or illegal when he put his name to it.
My opinion, therefore, is, that the witness offered was competent to answer the question put, and that there ought to be a new trial, with costs to abide the event.
Lewis, Ch. J. concurred.
New trial granted.(a)

 See this principle acknowledged, Smith v. Pickering, Peake’s N. P Cas. 50.

 See this case 3 Caines’ Rep. 279.