## SKILDING AND HAIGHT *against* WARREN.

A note was en-
dorsed by the
defendant for
the accommo-
dation of the
makers, who
were then in
good credit.
Before negoti-
ating the note
they became
insolvent, and
the defendant
then directed
them not to
part with it,
which they
promised.
They after-
wards passed
it to the plain-
tiffs, with full
notice of all the
circumstances,
in satisfaction
of a debt due
from them to
the plaintiffs,
which covered
part of the
amount of
the note, re
ceiving from
the plaintiffs
the balance in
cash. The
plaintiffs
brought an ac-
tion on the note

THIS was an action of *assumpsit* brought by the plaintiffs, as
endorsees of a promissory note, dated *May* 23d, 1815, for 500
dollars, payable in six months, to *Moses Warren*, the defend-
ant, made by *Gilchrist* and *Warren*, and endorsed by the de-
fendant, *Moses Warren*, and by *Benjamin Smith*.

At the trial, before Mr. J. *Spencer*, at the *Rensselaer*
circuit, in *December*, 1817, the counsel for the defendant
admitted all the facts requisite, in the first instance, to sup-
port the plaintiff's action, and then offered *Jonathan Warren*,
one of the makers of the note, as a witness in relation to
the origin and transfer of it. He was objected to by the
counsel for the plaintiffs on the ground that a party to a ne-
gotiable instrument is an incompetent witness to impeach it :
but the objection was overruled, and the witness admitted,
who stated the following circumstances. The note in ques-
tion was an accommodation note, endorsed by the defend-
ant, without consideration, to enable the makers, who were
partners in trade at *Troy*, to pay their debts, and carry on
their business. They expected to be able to obtain the
money from one *Wiswall*, who not being at home when the

against the endorser. Held, that the plaintiffs were not *bona fide* holders of the note, and could not,
under the circumstances, support the action ; and that as the defence rested on matters arising sub-
sequent to the execution of the note, one of the makers of it was a competent witness to defeat the
recovery ; and that, without a release, he being indifferent between the parties.

A party to a negotiable instrument is inadmissible, as a witness, to show it void at the time of its
execution ; but he is competent to testify as to facts subsequently arising.

note was made, which was in the latter part of *April*, or the beginning of *May*, 1815, the date of it was left blank, and the makers had permission to fill it up whenever they should obtain the money. Disappointed in procuring it from *Wiswall*, and in want of money, they filled up the date on the 23d of *May*, and procured the endorsement of *Smith*, and endeavoured to negotiate the note, but were unsuccessful. In the latter part of *June*, *Gilchrist* and *Warren*, who had until then been in good credit, failed, and became insolvent, and soon after, the defendant inquired of *J. Warren*, the witness, what had been done with the note, and being told that it was still in their possession, expressed his satisfaction, and directed them not to part with it, which the witness promised. *Gilchrist* and *Warren* were indebted to the plaintiffs in about 250 dollars, 70 dollars of which were borrowed money, and the residue was on a note not then due ; and soon after their failure, the plaintiff, *Haight*, called on them for payment of the 70 dollars, which they said they were unable to pay. *Haight* then proposed taking the note in question, and after deducting the amount of the account of the plaintiffs, to pay them the balance. The witness told *Haight* that they could not part with the note, and stated to him that the note was endorsed by the defendant, without consideration, for their accommodation, when they were in good credit; that, since their failure, the defendant had directed them not to part with it, which they had promised, and that they were insolvent and unable to pay the note, or to indemnify the defendant. Upon this *Haight* proposed not only to pay the balance of 250 dollars, but to wait two years for the payment of the note, and also to sign a letter of license, giving them two years for the payment of their debts, and to exert the influence of the plaintiffs with their other creditors to obtain their signatures to the same ; and if they could not pay the note at the end of two years, to give them further indulgence, if there was a prospect of their being able to pay it within a reasonable time. Two or three conferences subsequently took place, in relation to the subject, and, finally, about the third of *July*, *Gilchrist* and *Warren* delivered the note to the plaintiffs, who, a few days after, paid them the balance. The witness understood the agreement of the plaintiff

to wait for payment, to extend to the endorsers of the note.

Upon this evidence the jury, in conformity to the charge of the judge, found a verdict for the defendant, which the plaintiffs now moved to set aside, and for a new trial.

*Huntington,* for the plaintiffs, contended, that *Warren* was an incompetent witness; that no person whose name is on a negotiable instrument is competent to prove it void in its inception; or, at the time he put his name on it, and gave it currency. (*Mann* v. *Swan,* 14 *Johns. Rep.* 270. *Walton* v. *Shelly,* 1 *Term Rep.* 296. *Winton* v. *Saidler,* 3 *Johns. Cas.* 185. *Baker* v. *Arnold,* 1 *Caines' Rep.* 258. *Stille* v. *Lynch,* 2 *Dallas,* 194. *Jordain* v. *Lasbroke,* 7 *Term Rep.* 601. *Bent* v. *Baker,* 3 *Term Rep.* 34. *Peake's Cas.* 40. 118. 1 *Esp. Rep.* 298.) The date of the note, in this case, was immaterial. It took effect only from its delivery, (*Lansing* v. *Gaine & Ten Eyck,* 2 *Johns. Rep.* 300. 3 *Esp. N. P. Rep.* 108.) or from the time of its transfer, by endorsement to the plaintiffs. Though made and executed, it had no legal existence until it was endorsed; and the witness was called to prove a fact which destroyed the note to which he had given currency, and was, therefore, inadmissible, on the ground of interest.

This case is distinguishable from that of *Woodhull* v. *Holmes,* (10 *Johns. Rep.* 231.) There the note was drawn and delivered to the payee, and by him endorsed to a third person, for a particular purpose, who fraudulently put it in the hands of a broker. (1 *Day's Rep.* 17. 3 *Mass. Rep.* 27. 365. 4 *Mass. Rep.* 156. 6 *Mass. Rep.* 449.)

*Sutherland,* contra. The only objection at the trial was, that *Warren* was an incompetent witness, because his name was on the note, not on the ground of interest.

The general doctrine of the case of *Walton* v. *Shelly* has not been considered as law in *England,* since the case of *Jordain* v. *Lashbroke,* and the judges there, at *N. P.* have uniformly received persons whose names were on negotiable paper, to impeach it, unless interested. (*Jones* v. *Brooke,* 4 *Taunt. Rep.* 464. 1 *Esp. Rep.* 176. *Peake's Rep.* 117. 5 *Esp. Rep.* 119. 13 *East,* 175. *Phillip's Ev.* 32, 33.)

The principle of the case of *Walton* v. *Shelly* has, it is true, been adopted in this court, and in the supreme court of *Massachusetts*, but with some qualification. Though the party to a negotiable instrument is incompetent to prove it void, in its inception; yet for any other purpose, as to prove facts subsequent to making the instrument, he may be a witness, if not interested. The rule in *Walton* v. *Shelly* is founded in public policy, and it is against public policy to give currency to instruments executed *mala fide*, or in violation of law. All the cases, except that of *Stille* v. *Lynch*, (2 *Dall.* 194.) in which the principle has been applied, arose out of *gaming* or *usury*.

In *Jackson, ex dem. Mapes*, v. *Frost*, (6 *Johns. Rep.* 135.) the grantor of a deed was admitted as a witness to prove it fraudulent, his interest having been released. In *Hill* v. *Peyson*, (3 *Mass. Rep.* 559.) the supreme court of *Massachusetts* held, that the grantee of a deed was a competent witness to prove it fraudulent. So in *Baring* v. *Shippen* (2 *Binney's Rep.* 154.) the assignee of a bond was admitted as a witness to prove that it was fraudulently obtained by him. In an action of debt on the statute against bribery, the party bribed is a competent witness to prove it. (*Sayer*, 289. *Cowp.* 197.) The guilt of the witness is no objection to his competency, but goes only to his credit. (*Phillips' Law of Ev.* 33.) Accomplices are competent witnesses. The doctrine of the case of *Walton* v. *Shelly* is strictly confined to negotiable paper, and the reason of it is founded in commercial policy.

The proof offered must be such as goes to show the note void in its inception, or original creation, and to destroy it totally. The case of *Woodhull* v. *Holmes*, (10 *Johns. Rep.* 231.) is analogous and in point. (6 *Mass. Rep.* 430. 7 *Mass. Rep.* 470.) A party to a negotiable paper, it was there held, may be a witness to prove facts subsequent to its creation, and which go to show that the holder has no right to recover.

SPENCER, J. delivered the opinion of the court. It cannot be useful or necessary to review all the cases, upon the question whether a party whose name is on a negotiable

paper, can be admitted as a witness to impeach it, by testifying to facts arising subsequent to the execution of the note.

We have decided, that from principles of public policy, a man whose name is on such paper, cannot be admitted to show it void for usury, or for any other cause, at the time of its execution; but that as to facts subsequently arising, he may be admitted to testify, if he stands disinterested. I cannot perceive any essential difference between this case and that of *Woodhull* v. *Holmes*, (10 *Johns. Rep.* 231.) It was decided in that case, that the endorser was a competent witness to prove, that after the note was made and endorsed, it was delivered to a third person to be presented to a bank for discount, who, instead of offering it, fraudulently put it into the hands of a broker. The evidence of the endorser in that case, had he made out the facts, would have defeated a recovery, unless the holder had shown that he came fairly by the note. The evidence went to show that the note was an accommodation note ; that no consideration had passed between the immediate parties to it, and that the plaintiff had come unfairly into the possession of the note, and this the court held, the endorser might prove, notwithstanding the rule in *Winton* v. *Saidler*, and *Walton* v. *Shelly.*

The facts proved by the endorser in this case, make out a case precisely similar in principle to that of *Woodhull* v. *Holmes*. Here the note was endorsed by the defendant as an accommodation note to enable the maker to borrow money. No value was received, and the act of endorsing was gratuitous. The makers of the note were solvent when the defendant lent his endorsement; they had become insolvent when the plaintiffs received the note. After the insolvency of the makers, they had promised the defendant not to negotiate the note. With a knowledge of these facts, and to secure about 250 dollars due the plaintiffs, they took this note, in a manner entirely out of the usual course of business. They held out to the makers of the note, encouragement to aid them in getting a letter of license from their creditors ; they advanced a part of the money, and promised to wait two years before payment was exacted.

It cannot be doubted that the plaintiffs are *mala fide* hold-ers of the note, and that they took it with a view to charge a person, who from mere motives of friendship, had endors-ed it to aid men who were in good circumstances, but who had become insolvent. The plaintiffs were warned that the note was *functus officio*, and yet they took it.

It was strenuously contended at the trial, and on the ar-gument of the case, that the facts to which the endorser testified, were not facts arising subsequent to the execution of the note, but facts contemporaneous with the note, on this ground, that the note had no legal efficacy until it was endorsed.

The same objection existed to the testimony of the endorser, in the case of *Woodhull* v. *Holmes*, for there the note was not efficacious until it came into the hands of a *bona fide* holder; for as between the immediate parties, there was no liability to each other until then; and yet the testimony of the en-dorser was admitted as to the facts subsequent to the making of the note; and by the terms, execution of the note, the court meant its signature.

I repeat it, there is no difference in principle between this case and that of *Woodhull* v. *Holmes*.

A point has been taken, that *Jonathan Warren*, the maker was interested, and ought to have been released; it has been decisively answered, that the only objection made to his admission at the trial was the one already considered, and it may be added that he stood indifferent between the parties.

The other points subjoined to the case were not urged on the argument, and are not tenable.

Motion denied.