## Case No. 5,069.

FRAZER v. CARPENTER et al.

[2 McLean, 235.] 1

Circuit Court, D. Michigan. Oct. Term, 1840.

Mr. Frazer, for plaintiff.
Messrs. Buell & Witherell, for defendants.

OPINION OF THE COURT. This suit is brought by the plaintiff as the indorsee and holder of a note against the defendants [Carpenter, Palmer and Mack] as remote

1 [Reported by Hon. John McLean, Circuit Justice.

indorsers. To a count on the indorsement are added the common money counts. In the course of the trial a question was raised whether the note is admissible in evidence for the plaintiff as indorsee against the defendants, who are remote indorsers, under the general money counts. Where a bill of exchange was drawn by defendant and others, on the defendant alone, in favor of a fictitious person, and the defendant received the value of it from the second indorser, it was decided that a bona fide holder, for a valuable consideration, might recover the amount of it, in an action against the acceptor for money paid, or money had and received. Tatlock v. Harris, 3 Term R. 174; 1 East, 102; 3 Bos. & P. 560.

If a bill of exchange be drawn in favor of a fictitious payee, and that circumstance be known as well to the acceptor as to the drawer, and the name of such payee be indorsed on the bill, an innocent indorsee, for a valuable consideration, may recover on it against the acceptor, as on a bill payable to bearer. Minet v. Gibson, 3 Term R. 481; 1 East, 434; 1 H. Bl. 569. In the case of Mandeville v. Welch, 5 Wheat. [18 U. S.] 277, the court say—in all cases where the bill can be used as evidence, either against the parties, or against third persons, the same legal presumption arises of its having been given for value received, as exists in relation to a deed expressed to be given for a valuable consideration. And in the case of Page's Adm'r v. Bank of Alexandria, 7 Wheat. [20 U. S.] 35, the court remark—there are certainly cases in which a promissory note, or an indorsement of such note, may be offered in evidence, against the maker or indorser, under a count for money had and received, and if unconnected with other circumstances may be sufficient proof, in itself, to charge the defendant. An action of debt will lie by the payee or indorser of a bill of exchange, against the acceptor, where it is expressed to be for value received. Baborg v. Peyton, 2 Wheat. [15 U. S.] 385. The indorsee of the payee of a negotiable note can maintain an action for money had and received against the maker of the note, upon the proof of the note and indorsement. Penn v. Flack, 3 Gill. & J. 369; Young v. Adams, 6 Mass. 189; Wild v. Fisher, 4 Pick. 421. The indorsement of a cash note, of which the maker had notice and undertook to pay, establishes a privity of contract between indorsee and maker, and is legal proof of money held by the maker to the use of the holder. Ramsdell v. Soule, 12 Pick. 126; Cole v. Cushing, 8 Pick. 48. So money had and received lies by the holder of a note made payable to bearer. Pierce v. Crafts. 12 Johns. 90; Cruger v. Armstrong, 3 Johns. Cas. 5; Grant v. Vaughan, 3 Burrows. 1516.

To maintain assumpsit there must be a privity between the parties, but it may be a privity in fact or in law. Between each

party to a bill or negotiable note, and every other party, there is a sufficient privity in law; and each party liable to pay, is held responsible as for so much money had and received to the use of the party who is, for the time, the holder and entitled to recover. State Bank v. Hurd, 12 Mass. 172. Ellsworth v. Brewer, 11 Pick. 316. The holder of a negotiable note, whether by delivery or indorsement, is entitled to recover under the money counts. Olcott v. Rathbone, 5 Wend. 490; Ainslie v. Wilson, 7 Cow. 662; Butler v. Wright, 20 Johns. 367. A greater array of authorities might be brought to bear upon this point, but it is not deemed necessary. The above would not have been cited had not the late decisions in England established a different rule. We will now advert to some of those decisions.

In the case of Waynam v. Bend, 1 Camp. 175, Lord Ellenborough held, that a promissory note is evidence under the money counts only, as between the original parties to it. And the same rule has been followed by Lord Chief Justice Tenterden, in the case of Bentley v. Northouse, 1 Moody & M. 66; Exon v. Russell, 4 Maule & S. 507; Thompson v. Morgan, 3 Camp. 101. In the case of Eales v. Dicker, 1 Moody & M. 324, in an action by the indorsee against the acceptor of a bill of exchange, Mr. Justice Littledale said—I am decidedly of opinion that the bill is not evidence of money had and received by the acceptor to the use of the holder. And Mr. Chitty says, in his Treatise on Bills, (Ed. 1839) 595, it seems now to be settled, that the plaintiff can in no case recover under the count for money had and received, unless money has actually been received by the party sued, and for the use of the plaintiff. And he cites Barlow v. Bishop, 1 East. 434, 435, and Waynam v. Bend, 1 Camp. 175. The cases cited above, from 1 Camp. and 1 Moody & M., on which great reliance is placed, are both nisi prius cases. They are, undoubtedly, entitled to great respect, as having been decided by very learned and distinguished lord chief justices of the king's bench. But those decisions are not, as has been shown, conformable to previous decisions given by judges equally distinguished for their learning and ability. And, unless we labor under some misconception, these later decisions are not altogether consistent with some cases since decided in England.

In the case of Pownal v. Ferrand, 6 Barn. & C. 439, Lord Tenterden, and the other judges, held, that the indorser of a bill being sued by the holder, and having paid him part of the sum mentioned in the bill, might recover the same from the acceptor, in an action for money paid to his use. This recovery, it is true, was placed upon the peculiar circumstances of the case. The plaintiff having been forced to pay the money, in the language of the court, like a stranger, whose property, being on the premises, was distrained by the landlord for rent, is obliged to redeem his property, may recover on the money count. But suppose the plaintiff, on being applied to by the holder of the bill, had paid the full amount, for which, as indorser, he was liable; could he not, on the same principle, have recovered from the acceptor, on the money count? The payment of what he is legally bound to pay, without suit, could not, in any respect, weaken his right. Nor could it have been weakened by paying the whole amount of the bill instead of a part of it. And would not the indorser, in this view, stand in the same relation to the acceptor, as the holder of whom he received the bill. It was equally the duty of the acceptor to pay the bill to the holder as the assignee of it, as to the indorser who has taken it up. This change in the holder of the bill, could have no effect on the obligation of the acceptor. He was bound, and equally bound, to both parties. The assignee in purchasing the bill paid for it a valuable consideration, and the indorser in taking it up did the same thing. The indorser then, having taken up the bill is the holder, having the same rights and remedies as when the bill was first assigned to him. Now on what ground may he recover the amount of the bill from the acceptor? Whether as indorser or assignee of the bill he has paid for it the sum which the acceptor is bound to pay. And bound to pay it to him as the holder of the bill. Is not the consideration paid for the bill money paid on account of the acceptor, and for his use? And is not the bill evidence of this? In the above case Lord Tenterden remarks —"the law is, that a party, by voluntarily paying the debt of another, does not acquire any right of action against that other; but if I pay your debt because I am forced to do so, then I may recover the same: for the law raises a promise on the part of the person whose debt I pay to reimburse me." And the case of Exall v. Partridge, 8 Term R. 308, is referred to as sustaining this principle. The plaintiff, in that case, put his goods on the premises, knowing that he thereby placed himself in a situation to have his goods distrained for the rent; they were distrained, and, to redeem them, he had to pay the money sued for, and which the court held he might recover on the general money count.

A surety places himself in a situation in which he is compelled to pay the debt of his principal, and the sum thus paid he may recover from his principal on the general count. Now, in principle, does this case differ from the one in Term Reports? By placing his property on the premises it became subject to the demand of the landlord for rent, and the plaintiff thereby became the surety of the tenants. It was, in effect, the same as giving the property in pledge for the payment of the rent. Having paid the money to redeem his property, he might well re-

cover the amount from the defendants, as money paid to their use. Every indorser of a bill is a surety for the drawer or the acceptor, and may be compelled to pay it. Pownal et al., in the above case, became the sureties of Ferrand, the acceptor, and, having paid a part of the bill, it was properly considered as so much money paid for the use of the acceptor.

The right of the plaintiff, then to recover, depends not upon the peculiar circumstances of the case, but upon the fact, that being legally bound to pay, he has paid a sum of money which the defendant owed, and which he was bound to pay. And this principle applies to all cases of suretyship, where money has been paid by the surety, whether the plaintiff was bound as indorser or otherwise. The right of the owner of the property distrained, to recover, rested not alone upon the fact of his having paid the rent for the defendants, but upon that fact, coupled with the fact of the obligation he was under to pay it, to redeem his property. And this obligation arose from his voluntary act in placing his property on the premises. The right, then, of the plaintiffs to recover, in the cases of Exall v. Partridge [supra] and Pownal v. Ferrand [supra] rested upon a general principle. And this principle was directly in conflict with the decisions referred to, that a bill of exchange is not admissible in evidence, under the money counts, in behalf of the holder against the acceptor. And this upon the ground that there is no privity between the parties. In the case of Pownal v. Ferrand, Mr. Justice Littledale seems to have felt the pressure of this view, for he says that for some time he entertained considerable doubt whether the plaintiff, as indorser, in that form, could recover. Mr. Justice Holroyd took the broad, and, as we believe, the correct ground. The defendant, "he says, as acceptor of the bill, was liable in the first instance to pay it. If he had performed his duty, the plaintiff would not have been called upon by the holder; but, as an indorser, he was liable to be called upon to pay the whole or part; he was called upon, and was actually compelled to pay part." "It is said the plaintiff, by making this payment, was only remitted to his remedy upon the bill; but I am of opinion that the plaintiff is entitled to recover in this action, upon the same principle upon which a surety is entitled to recover money from his principal. I think that a party is not bound to resort to the original engagement, unless it be by deed, but that he may, at his election, found his action upon the original engagement, or bring indebitatus assumpsit for money paid." Except through the original engagement, where is the privity? A voluntary payment would not maintain the action. And if the privity is derived through the original engagement, it extends equally to the indorsee who has paid for the bill and become the holder, as to the indorser who has taken it up and become the holder. Each has paid the same sum for the bill. And as it regards the right to maintain the action for money paid, the bill being due, it can not be material whether it was purchased or taken up by the holder, before or after it became payable. Lord Tenterden having decided the action could not be maintained on the general counts, except as between the immediate parties to the bill, seems driven, of necessity, in the case of Pownal v. Ferrand [supra], to make a distinction between it and an ordinary case where the holder of the bill sues the acceptor. But the distinction he draws, is one of circumstances, and not of principle. In the case of Wilson v. Coupland, 5 Barn. & Ald. 228, these facts were proved: The defendants being indebted to Taillasson & Co., in the sum of £768, upon the balance of accounts, of money had and received; and Taillasson & Co. being indebted to the plaintiffs in a much larger amount, transferred this demand to the plaintiffs, and which the defendants agreed to pay them. On this state of facts the court held, Abbott, Chief Justice, afterwards Lord Tenterden, that the plaintiffs could recover the amount under the general count for money had and received. Now, here no money passed between the parties. The debt was due to Taillasson & Co., and the defendants agreed to pay it to the plaintiffs. There was no privity except through the promise of the defendants. And does not the acceptor of a bill promise every holder to pay it at maturity?

In the language of the supreme court, in the case of Raborg v. Peyton, 2 Wheat. [15 U. S.] 385, we think "it is very difficult to perceive how it can be correctly affirmed that there is no privity of contract between the payee and acceptor. There is, in the very nature of the engagement, a direct and immediate contract between them. The consideration may not always, although it frequently does, arise between them; but privity of contract may exist, if there be an express contract, although the consideration of the contract originated aliunde. Besides, if one person deliver money to another for the use of a third person, it has been settled that such a privity exists, that the latter may maintain an action of debt against the bailee. And it is clear that an acceptance is evidence of money had and received by the acceptor for the use of the holder. It is the evidence of money paid by the holder to the use of the acceptor. A privity of contract, and a duty to pay, would seem, in such case, to be completely established; and wherever the common law raises a duty, debt lies." If the contract thus establish the privity and a duty as between the holder of the bill and the acceptor, the same privity and duty must exist between the holder and any prior indorser of the bill whether immediate or remote. We, therefore, think

that, under the money counts, this bill is admissible in evidence.

The defendants then offered the maker of the note to prove that after its execution it had been altered in a material part without his consent or knowledge. To his competency, as a witness, the plaintiffs' counsel objected. The general rule is, says Chit. Bills, (Ed. 1839) 653, that it is no objection to the competency of a witness, that he is, also, a party to the same bill or note, unless he be directly interested in the event of the suit, and be called in support of such interest, or, unless the verdict, to obtain which his testimony is offered, would be admissible evidence in his favor in another suit, Bent v. Baker, 3 Term R. 27; Jordaine v. Lashbrooke, 7 Term R. 601; Smith v. Prager, Id. 62; Jones v. Brooke, 4 Taunt. 464.

So far as regards the amount of the note the witness seems to have no preponderance of interest for the one party over the other, to this action. But this does not hold in respect to the costs of this suit. Should the plaintiff fail in this action the witness would not be liable to him for the costs; but should he succeed he is liable to the defendants for the costs. On this ground, therefore, he is incompetent. But a release from the defendants being presented, this objection to the witness is removed. In the case of Walton v. Shelley, 1 Term R. 300, the court, after a full and most able and elaborate consideration of the question, held, that a person is not a competent witness to impeach a security which he has given, though he is not interested in the event of the suit. But this decision was afterwards overruled in the case of Jordaine v. Lashbrooke, above cited, and is not considered as law by the English courts. It has been adopted, however, by the supreme court. In the case of Bank of U. S. v. Dunn, 6 Pet. [31 U. S.] 55, the court held that no person, who is a party to a negotiable note, shall be permitted, by his own testimony, to invalidate it. And the same rule was sanctioned in the case of Metropolis Bank v. Jones, 8 Pet. [33 U. S.] 14. In many of the state courts this rule has been sanctioned. Haughton v. Page, 1 N. H. 60; Churchill v. Suter, 4 Mass. 156; Warren v. Merry, 3 Mass. 27; Jones v. Coolidge, 7 Mass. 199; Winton v. Saidler, 3 Johns. Cas. 185; Wilkie v. Roosevelt. Id. 206; Coleman v. Wise, 2 Johns. 165; Skilding v. Warren, 15 Johns. 270. Some doubt as to the rule was suggested by the judges in the case of Powell v. Waters, 8 Cow. 669, but no decision was given. Stille v. Lynch, 2 Dall. [2 U. S.] 194; Allen v. Holkins, 1 Day, 17; Baring v. Reeder, 1 Hen. & M. 175; 2 Bin. 154; 2 Desaus. Eq. 224; Bank of Montgomery Co. v. Walker, 9 Serg. & R. 236. The purpose for which the witness is called is not to show that the note was void in its creation, but that its validity has been destroyed by a subsequent alteration. An alteration after it had been signed by the witness. In the case of Baker v. Arnold, 1 Caines, 258, the court held that an indorser of a note was a competent witness to prove the indorsement was made after the note was due. Judges Thompson and Livingstone held the indorser was not a competent witness, under their decision, in the case of Winton v. Saidler [3 Johns. Cas. 185], cited in 1 Caines, 267, which adopted the rule of Walton v. Shelley. But Judge Kent, and two other judges, held otherwise. In his opinion, Judge Kent said—I do not think the decisions of this court go so far as to warrant a rejection of the indorser in the present instance. In those cases the maker of the note in the one, and the indorser in the other, were offered to prove the note to have been usurious. Those witnesses were, therefore, called to invalidate the paper they had signed. So in the case of Walton v. Shelley, the indorser, who was rejected, was called to prove the note void by reason of usury. And he further remarked, that he could wish to see the rule of witnesses being incompetent, on grounds of policy, rendered manageable by being reduced to limits susceptible of definition and certainty. To do this, he says—we must adhere strictly to the cases which produced the rule, and exclude only the witness who was called to impeach his own paper, by showing it to have been immoral, or illegal, when he put his name to it. The same rule is sanctioned in the following cases: Warren v. Merry, 3 Mass. 27; Barker v. Prentiss, 6 Mass. 430; Webb v. Danforth, 1 Day, 301; Hubbly v. Brown, 16 Johns. 70; Myers v. Palmer, 18 Johns. 167. The indorser is not a competent witness, in a suit against the maker of a promissory note, to prove that the note was originally drawn for the indorser's accommodation, and thereby enable the maker to set up a discharge by the holders' giving time to the indorser. For, though a party to negotiable paper may be received to prove subsequent facts to discharge it, yet he is not competent to show that the instrument was not, in truth, what it purported on its face to be. Bank of Montgomery Co. v. Walker, 9 Serg. & R. 236.

A party to a negotiable instrument may testify to facts which do not prove it to have been originally void. Wendell v. George, 1 R. M. Charlt. 51. The plaintiff declared as an indorsee of a promissory note, drawn by Foster Charlton, payable to the defendant; Lord Mansfield admitted the drawer to prove that the date had been altered. 2 Esp. 708. And in the case of Dickinson v. Prentice, 4 Esp. 32. Lord Kenyon admitted the drawer to prove, in an action by the holder against the acceptor, that the acceptance was a forgery. His lordship said the objection went to the credit of the witness, and not his competency. In an action on a note by the payee against the surety, the principal is a competent witness; and his testimony is admissible to prove facts happening after its execution, to discharge the surety. Free-

man's Bank v. Rollins, 1 Shepley [13 Me.] 202. The payee of a note, in a suit between the assignee and the maker, is a competent witness to prove upon what terms the assignment was made, if called by the maker; their interests being adverse. Stone v. Vance, 6 Hammond [Ohio] 248. The payee of a note, who has indorsed it with a saving of his own liability, is a competent witness to prove an alteration in the note since its execution. Parker v. Hanson, 7 Mass. 470. An indorser is a good witness in an action by an indorsee against the maker to prove that the note was, after the indorsement, fraudulently put into circulation. Woodhull v. Holmes, 10 Johns. 231. Where a note, before it became due, was paid to the payee by the maker, who took a receipt in full, and the note was afterwards, before it became due, indorsed by the payee and by the indorsee to the plaintiff, who was informed of the payment before receiving the note, it was held that the plaintiff took it subject to such payment, and that the first indorsee was a competent witness to prove the payment of the note. White v. Kibling, 11 Johns. 128. In the case of Sillding v. Warren, 15 Johns. 270, it was held that one of the makers of a note was competent to prove that the plaintiffs who sued the indorser were not bona fide holders, and thereby defeated their action. Such subsequent fact, however, must not involve the turpitude of the witness. Hubbly v. Brown, 16 Johns. 70. Under this rule it has been held that a second indorser is competent to prove that the third indorser had said that he had received and discounted the note on usurious interest. Powell v. Waters, 17 Johns. 176.

The great and governing principle in the case of Walton v. Shelley, and the other cases cited, is, that an individual, whose name appears upon a negotiable instrument, is not a competent witness to prove that it was not a bona fide instrument, at the time it was made. That he shall not be permitted to prove any fact which conduces to show that the bill or note was not what it purported to be when it received its signature. And this rule is founded upon public policy. It is deemed as incorrect in morals as in policy, that a person whose signature gives credit to a negotiable instrument should not only practice a fraud upon every holder of it, but be a witness to prove the fraud. That he should, by an exhibition of his own turpitude, destroy the value of the instrument in the hands of an innocent holder. But this rule is limited to the transaction in which the witness was a party. He may prove facts which subsequently transpired, though they should conduce to defeat the action of the plaintiff. But these must be facts in which he had no agency; and in reference to which, as regards the trial on hand, he can have no direct interest. Under this view the witness now offered, showing a release from the defendants, may be examined as to the alteration of the note after it was executed by him

and passed out of his possession. The verdict in this case can not be given in evidence in any case either for or against the witness. He is responsible to the plaintiff as the maker of the note, whatever may be the result of this trial. That the maker of the note, as between the holder and the indorsers, is a competent witness, the defendants having released him from costs, all the authorities establish. And the only question is—what facts may he prove? These must be subsequent to his agency in the making and negotiation of the instrument, and it is not perceived that any other limit can be imposed.

The witness was examined, and other witnesses, but the jury not being able to agree upon their verdict, they were discharged, and the cause was continued.