By the Court, Bronson, J.
Confidential communications between attorney and client, concerning the matter to which the retainer relates, are not to be disclosed in court, unless the client waives his privilege. The mode in which the information is communicated—whether by an oral state *35 ment of facts, or by delivering a written instrument—cannot be important. The principle is the same in whatever way the information passes. The policy of the law allows a man to make the, best defence in his power. Whatever may be his delinquency, he is permitted to confer freely with his counsel, and to place in his hands any paper touching the matter in question, without the peril of having his confidence betrayed under the forms of law. The attorney may be called to prove the existence of a paper, and that it is in his possession, for the purpose of enabling the other party to give parol evidence of its contents. But he cannot be compelled to produce or disclose the contents of a paper which has been deposited with him by his client. (Brandt v. Klien, 17 John. R. 335. Jackson v. McVey, 18 id. 330; Rex v. Smith, 1 Phil. Ev. 142. Brard v. Ackerman, 5 Esp. R. 119. And see Bevan v. Waters, 1 M. & M. 235; Eicke v. Nokes, id. 303; Vin. Abr. Discovery, I; Durkee v. Leland, 4 Verm. R. 612; Anon. 8 Mass. R. 370.) In Wright v. Mayer, (6 Ves. 280,) Lord Eldon said, he never heard of a subpoena duces tecum upon an attorney, to produce the papers of his client. In Rex v. Dixon, (3 Burr. 1687,) the point was decided, that the attorney was not obliged to obey such a subpoena. Lord Mansfield said, that instead of producing the papers, the attorney ought immediately, upon receiving the subpoena, to have delivered them up to his client;
This privilege of the client does not extend to every fact which the attorney may learn in the course of his employment. There is a difference, in principle, between communications made by the client, and acts done by him in the presence of the attorney. It may be, and undoubtedly is, sound policy to close the attorney’s mouth in relation to the former, while in many cases it would be grossly immoral to do so in relation to the latter. It is the privilege of one who is charged with a wrong, either public or private, to speak unreservedly with his counsel,in preparing for his defence; but he should not be allowed to sttip the mouth of one who was present when the wrong was done, upon the allegation that he was retained as *36 counsel to see, or aid in the transaction. Indeed, I think there can be no such relation as that of attorney and client, either in the commission of a crime, or the doing of a wrong by force or fraud to an individual. The privileged relation of attorney and client can only exist for lawful and honest purposes.
Chief Baron Gilbert, after stating the general rule in relation to the exclusion of counsel, says: “ Where the original ground of communication is malum in se, as if he be consulted on an intention to commit a forgery or perjury, this can never be included within the compass of professional confidence; being equally contrary to his duty in his profession, his duty as a citizen, and as a man. But if such offence, as forgery for example, committed without his being privy, comes to his knowledge in the course of confidential transactions with his client in the way of business, he shall not be compelled to assist in proving it.” (1 Gilb. Ev. 277, Dublin, 1795. See Clay v. Williams, 2 Munf. 105; Parker v. Carter, 4 id. 273; Rex v. Haydn, 2 Fox & Smith, (K. B. in Ireland,) 379.)
I will not undertake to say how far the distinction between the communications and the acts of the client may extend; but there can be no good reason for excluding the attorney when he has witnessed a transaction in the way of business between his client and a third person; as the adjustment of an account, the execution of a deed, the payment of a smn of money, the giving up of securities, or the like. It is not necessary that a man should have an attorney to witness his dealings with third persons; and if one is called in, I can see no reason why he, like any other person who was presentí should not be sworn to prove what was done.
In the case at bar, I feel no difficulty in saying, that Mr. Sill should have been required to answer the first two questions which were put to him-. He says he could not do so without violating the confidence reposed in him by his client. But that was a question for the referees—not the witness. When the facts are disclosed, it is for. the court to decide whether the witness should be required to answer. *37 The substance of the first two questions put to the witness is—“ Was you ptesent when the account stated was signed when and where was it doiie, and who was present 7” The witness answered, that all his knowledge of the writing had been obtained by him as counsel in the cause. He evidently did not intend to say that he was not present, &c., for that would be answering, instead of declining to answer, the questions put to him. The meaning of the answer is, that if the witness was present and .'saw the paper signed, &c. he was so present as counsel for the plaintiff. The case then comes to this: The plaintiff, in adjusting an account with a third person, and procuring a written acknowledgment of a balance due, calls in a counsellor at law to witness the transaction; and the question is, whether the attorney shall be permitted to speak without the leave of his client? Upon that question I cannot entertain a doubt. What was done and said between the plaintiff and Tannahill in the way of business, cannot be turned into a confidential communication between attorney and client, merely because the plaintiff had an attorney present to hear and see what took place. No secret was confided to the attorney, and he might have been required to answer, not only when and where the account was signed, but as to every thing that was done and said between the plaintiff and Tannahill on that occasion, so far as the matter would be pertinent if proved by any other witness. If any communications passed between the attorney and client apart from Tannahill, these may be privileged; but nothing else.
In Lord Say & Seal’s case, (10 Mod. 40,) the objection to a common recovery was, that there was no tenant to the praecipe ; and on producing a deed, the attorney who had been entrusted in suffering the recovery was called to prove that the deed had been- ante-dated five months; and he was admitted. The court said, that “a thing of such a nature as the time of executing a deed, could not be called the secret of his client; that it was a thing he might come to the knowledge of without his client’s acquainting him, and was of that nature, that an attorney concerned, or any body else, *38 ^ might inform the court of.” From the manner in which this case is cited by Buller, (N. P. 284,) it may be inferred that the attorney Was a subscribing witness to the deed, but no such fact is mentioned by the reporter. In Rex v. Watkinson, (2 Str. 1122,) the defendant was indicted for perjury in an answer in chancery, and his solicitor, who was present when the answer was put in, was called to identify the defendant as the person who was sworn; but Chief Justice Lee would not compel the solicitor to testify. “ Qjumre tamen,” says the reporter, “ for this was to a fact in his own knowledge, and no manner of secrecy committed to him by his client.” That the reporter was right, and the court wrong, has been agreed ever since. In Doe v. Andrews, (Cowp. 845,) Lord Mansfield said, “I have known an attorney obliged to prove his client’s having sworn and signed the answer upon which he was indicted for perjury.” (And see Buller’s N. P. 284; 1 Phil. Ev. 146, 7th ed.; 1 Gilb. Ev. 277; 2 Stark. Ev. 398; Roscoe’s Cr. Ev. 150; Peake’s Ev. (Norris,) 251; Greenough v. Gaskell, 1 Myl. & K. 98.) In Studdy v. Sanders, (2 Dowl. & Ryl. 347,) the clerk of the solicitor was called to identify the defendants, as the persons who had put in an answer in chancery, and it appearing that his knowledge of the fact arose wholly from communications with the defendants, the evidence was rejected, and the plaintiff nonsuited. But the nonsuit was set aside. The court said, the fact offered to be proved was not in the nature of a confidential communication between attorney and client, because it was a fact easily cognizable to the witness and to many other persons, without any confidence on the subject being reposed in him. See Parkins v. Hawkshaw, (2 Stark. R. 239,) which seems to be the other way; But the witness was not called to speak of an act, but to disclose communications with the client.
The attorney may be called against his client, to prove a deed to which he is a subscribing witness. In Doe v. Andrews, (Cowp. 845,) Lord Mansfield said, “An attorney has nd privilege to give evidence of collateral facts.” In *39 Robson v. Kemp, (5 Esp. R. 52,) the attorney was required to testify concerning a warrant of attorney which he had subscribed as a witness, Lord Ellenborough said, the attorney was bound to disclose all that passed at the time, respecting the execution of the instrument; but not what took place.in the concoction and preparation of the deed, or at any other time, and not connected with the execution of it; upon which matters he had a right to be silent. (4 Esp. R. 235, S. C.) In Hurd v. Moring, (1 Car. & Payne, 372,) the attorney was required to prove his client’s hand-writing, although his knowledge of it was acquired solely from seeing him sign the bail bond; and in Johnson v. Daverne, (19 John. R. 134,) the attorney had acquired a knowledge of his client’s hand-writing after the retainer, but without any confidential communication, and it was held that he was bound to testify. In Sanford v. Remington, (2 Ves. jun. 189,) the chancellor said, the witness may be called on to disclose all that did pass in his presence at the execution of the deed; so his having been sent by his client with orders to put the judgment in execution—that is an act; but he is not to disclose the "private conversation as to the deed, with regard to what was communicated as to the reasons for making it.
In Robson v. Kemp, (5 Esp. R. 52,) the attorney was called to prove the destruction of a deed, and said, that all he knew about it had been acquired "by being called in by both parties as their attorney; and Lord Ellenborough rejected the' evidence. He remarked, “ The act cannot be stripped of the confidence and communication as an attorney, the witness being then' acting in that character. One sense is privileged as well as another. He cannot be said to be privileged as to what he hears, but not as to what he sees, where the knowledge acquired as to both has been from his situation as attorney.” Notwithstanding what is said about the sense of seeing being privileged, I think the witness must have been questioned concerning what was said by the client; for the judge immediately adds: “I therefore think, if the only knowledge he has, as to the destruc *40 tion of this instrument, was acquired from the confidential communication made to him as an attorney, that he cannot be examined to it.” It may have been thought important that the witness had acted as attorney for both parties; for where an attorney is called in by one party to witness a transaction in the way of business with a third person, I cannot think that his mouth is closed either as to what he saw or what he heard. It is not in the nature of a confidential communication between an attorney and client. (See Lessee of Devoy v. Burke, 2 Fox & Smith (Irish K. B.) 191.) In Duffin v. Smith, (Peake’s N. P. Cas. 108,) the defendant called the plaintiff’s attorney, to prove that the consideration of the bond in suit was usurious; and he was admitted. Lord Kenyon, said: “ Where any thing is communicated to an attorney by his client for the purpose of his defence, he ought i not to divulge it; but where he himself is, as it were', a party to the original transaction, that does not come -to his knowledge in the character of an attorney, and he is liable to be examined the same as any other person,” (See 12 Viner’s Abr. 38, pl. 1.)
An attorney’s clerk may be called to prove that he received a particular paper from the client. (Eicke v. Nokes, 1 M. & M. 303.) And the attorney may be required to make discovery of a deed entrusted to him by his client, by answering whether there was such a deed, where it is, to whom delivered, when he last saw it, and in whose custody; but not to produce the deed, or discover its contents. (Kington v. Gale, 8 Viner’s Abr. 548.) Mr. Justice Buller, in speaking of cases where the attorney may be called, says: “ If the question were about a razure in a deed or will, he might be examined to the question whether he had ever seen such deed' or will in other plight, for that is a fact of his own knowledge; but he ought not to be permitted .to discover any confessions his client may have made to him on such head. So, if an attorney were present when his client was sworn to an answer in chancery, upon an indictment for perjury he would be a witness to prove the fact of taking the oath, for it is a fact in his own *41 knowledge, and no matter of secrecy committed to him by his client." (Bull. N. P. 284.) In the case at bar, the witness was questioned as to “a fact in his own knowledge;” it was “no matter of secrecy committed to him by his clientand I can see no possible reason why he should not answer.
There is a further reason for holding the evidence admissible. The case which' the defendant’s counsel proposed to make out, was, that the account was stated, and a large balance acknowledged to he due the plaintiff, for the purpose of defrauding the defendants, Edwards & McKibben. Now, if the plaintiff consulted counsel beforehand as to the means, the expediency, or consequences of committing such a fraud, his communications may, perhaps, be privileged; and they are clearly so, as to what he may have said to counsel since the wrong was done. But the attorney may, I think, be required to disclose, whatever act was done in his presence towards the perpetration of the fraud. One who is charged with having done an injury -to another,'either in his person, his fame, or his property, may freely communicate with his counsel, without the danger of having his confidence betrayed through any legal agency. But when he is not disclosing what has already happened, but is actually engaged in committing the wrong, he cán have no privileged witness. (See the remarks of Ld. Brougham, in Greenough v. Gaskell, 1 Myln. & K. 98.)
The third question proposed to the witness was, in substance, “ When did you first see the account stated, and was the evidence of a settlement endorsed on the account when you first saw it ?” Although the question does not necessarily imply so much, it was understood on the hearing as intended to draw from the witness an admission that he had seen the paper in the hands of his client, or received it from him, in a different state or condition ffom that in which it appeared on the trial. If such was the aim of the defendants in putting the question, I think the referees were right in not allowing it to be answered. We have already seen, -that the attorney cannot be compelled either *42 to produce or to disclose the contents of a paper which he has received from his client; and this is so, although the paper may be required as the foundation for a public prosecution. (Rex v. Dixon, 3 Burr. 1687. Rex v. Smith, 1 Phil. Ev. 142.) The principle is, that all confidential communications between attorney and client, whether written or oral, are alike privileged. If the plaintiff, at any particular time, delivered or exhibited the account to Ms attorney without the evidence of a settlement endorsed upon it, it was the same thing, in substance, as though he had at that time told him verbally that he had an account in that plight; and the one form of communication is, I think, as much privileged as the other.
No case which has fallen under my observation necessarily goes the length of deciding that such a question must be answered. In Lord Say and Seal’s case, (10 Mod. 40,) it does not appear that the fact of the ante-dating of the deed, was in any form communicated to the attorney by his client. On the contrary, it may fairly be inferred from what is said, that the ante-dating of the deed was the joint work of the attorney and client; and in that point of view, the decision supports a position which has already been stated, that the attorney must answer as to any fraudulent act on the part of the client which was done in his presence. The cases to which I have already referred, to show that the attorney may be called to identify his client as the person who had sworn to an answer in chancery, to prove a deed to which the attorney is a subscribing witness, or to prove the hand-writing of the client, all stand on the ground that the knowledge of the attorney was not acquired as a secret from his client. In Duffin v. Smith, (Peake’s N. P. Cas. 108,) where the plaintiff’s attorney was required to testify to the usurious consideration of the bond and mortgage, the facts are very briefly stated; but it is quite clear that Lord Kenyon did not intend to depart from the general principle; for he said, 11 Where any thing is communicated to an attorney by his client, for the purpose of defence, he ought not to divulge it; but where he himself is, as it *43 were, a party to the original transaction, that does not come to his knowledge in the character of an attorney, and he is liable to be examined the same as any other person.”
In Baker v. Arnold, (1 Caines, 258,) the question was presented, whether the attorney could be required to answer as to what state the note was in when he received it from his client ; and the reporter supposed the point was decided in favor of the admissibility of the evidence. But he was mistaken ; the case went off on another question. (See the remark,s upon this case in Brandt v. Klien, 17 John. R. 338.) Although the point was not decided in Baker v. Arnold, it was discussed by three of the judges; and Thompson and Livingston, Js. were of opinion, that the witness should not be required to answer the question: Radcliff, J. held the contrary; and the other two judges expressed no opinion on the point. It is said in Buller's N. P. 284, in mentioning the cases where the attorney may be called—“ If the question were about a razure in a deed or will, he might be examined to the question, whether he had ever seen such deed or will in other plight, for that is a fact of his own knowledge." The reason assigned by Buller plainly shows, that he was speaking of a case where the attorney had acquired his knowledge of the state of the instrument, previous to his retainer, or in some other way than from his client. (See per Thompson, J: in Baker v. Arnold, 1 Caines, 267, 8.) Although he does not cite it, I have no doubt that Buller had in his mind the case of Cuts v. Pickering, (1 Vent. 197,) where, on a trial at bar, it was held, that the solicitor must answer as to what his client had told him before the retained' concerning a razure in a will. In Brown v. Payson, (6 N. Hamp. R. 443,) the precise point was adjudged, that the attorney cannot be required to testify concerning the state of a written instrument, at the time it was received from his client, for the purpose of commencing an action upon it. To that doctrine I fully assent. I am unable to perceive any solid distinction between the oral statement of a fact to counsel, and a communicatioh of the same fact, by delivering to him a deed or other written instrument.
*44 The referees were right in not permitting the last question to be answered: but as they were wrong in relation to the first two questions, there must be a rehearing.
Report set aside.